To be Submitted


SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT
----------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

                Plaintiff-Respondent,

      -against-

RAY ROSS,

                Defendant-Appellant.
----------------------------------------X



BRIEF FOR DEFENDANT-APPELLANT


Indictment No. 1050N/15
Appellate Division Case No. 2016-08383


BRUCE R. BEKRITSKY
Attorney for Defendant-Appellant
1551 Kellum Place
Mineola, New York 1101
516 742-8055


Madeline Singas
District Attorney, Nassau County
Appeals Bureau
262 Old Country Road
Mineola, New York 11501
516 535-3328

**TABLE OF CONTENTS**

TABLE OF CONTENTS.. . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . iii
    Federal Cases. . . . . . . . . . . . . . . . . . . . iii
    Statutes.. . . . . . . . . . . . . . . . . . . . . . iv
    Other Authorities. . . . . . . . . . . . . . . . . . iv

DESCRIPTION OF ACTION
    STATEMENT REQUIRED PURSUANT TO CPLR 5531.. . . . . . . . v

ADDITIONAL STATEMENT REQUIRED
    PURSUANT TO 22 NYCRR 640.3(c)
    . . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT REQUIRED PURSUANT TO
    22 NYCRR 670.10.3(g)(viii)(A) and(B).. . . . . . . . . vii

QUESTIONS INVOLVED. . . . . . . . . . . . . . . . . . . . 1

FACTS.. . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT I.. . . . . . . . . . . . . . . . . . . . . . . . . 7
    DEFENSE COUNSEL WAS NOT COMPETENT. . . . . . . . . . . 7

POINT II. . . . . . . . . . . . . . . . . . . . . . . . . 11
    THE DEFENSE SHOULD HAVE BEEN GIVEN A WITNESS'S
    CRIMINAL RECORD. . . . . . . . . . . . . . . . . . . 11

POINT III.. . . . . . . . . . . . . . . . . . . . . . . . 14
    THERE WAS NO CORROBORATION OF THE ALLEGED OFFENSE. . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## Federal Cases

Brady v. Maryland, 373 U.S. 83 (1963) (T: 236-237, 356-357, 363-364). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Giglio v. United States, 405 U.S. 150 (1972) . . . . . . 5, 11, 12

Glasser v. United States, 315 U.S. 60, 70 (1942). . . . . . . . 7

Jones v. Barnes, 463 U.S. 745 (1983). . . . . . . . . . . . . . 8

Lockhart v. Fretwell, 506 U.S. 364 (1993).. . . . . . . . . . 9

McMann v. Richardson, 397 U.S. 759, (1970). . . . . . . . . 7, 8

Powell v. Alabama, 287 U.S. 45, 71-72 (1932). . . . . . . . . . 7

Strickland v. Washington, 466 U.S. 668 (1984).. . . . . . . 8, 9

Tollett v. Henderson, 411 U.S. 258, 266-69 (1973. . . . . . . 8

United States v. Agurs, 427 U.S. 97, (1976).. . . . . . . . . . 8

## State Cases

People v. Brown, 66 A.D.2d 223, 413 N.Y.S.2d 482 (3rd Dept., 1979 . . . . . . . . . . . . . . . . . . . . . . . . . . . . )15

People v. Buckley, 501 N.Y.S.2d 554, 131 Misc.2d 744 (Supreme, Monroe, 1986) . . . . . . . . . . . . . . . . . . . . . . 11

People v. Evans, 1999 N.Y. Slip Op. 70, 84 N.Y.S.2d 648 (3rd Dept., 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . 7

People v. Leach, 108 A.D.2d 871, 85 N.Y.S.2d 769 (2nd Dept., 1985 . . . . . . . . . . . . . . . . . . . . . . . . . . . )7

People v. Pawley, 71 A.D.2d 307, 23 N.Y.S.2d 69 (4th Dept., 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

People v. Rosario, 9 N.Y.2d 286, 213 N.Y.S.2d 448, cert. denied, 368 U.S. 866, 82 S.Ct. 117, 7 L.Ed.2d 64 (1961).. . . . . . . . 11

**Statutes**

Criminal Procedure Law 240.45(1) . . . . . . . . . . . . . . 11

Penal Law §130.16 . . . . . . . . . . . . . . . . . . . . . 14

Penal Law §130.85.. . . . . . . . . . . . . . . . . . . . . 15

Penal Law §260.11.. . . . . . . . . . . . . . . . . . . . . 14

**Other Authorities**

Justia.com, Portal Website, US Law, Offenses Against the United
States, Rights of Accused in Criminal Prosecutions, Sixth Amend-
ment, Criminal Prosecutions.. . . . . . . . . . . . . . . . . 9

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION:  SECOND DEPARTMENT
----------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

              Plaintiff-Respondent,

        -against-

RAY ROSS,

              Defendant-Appellant.
----------------------------------------X

Indictment No.
No. 1050N-15

Case No. 2016-08383

**DESCRIPTION OF ACTION**
**STATEMENT REQUIRED PURSUANT TO CPLR 5531**

    1.   The indictment number of the case in the court below was 1050N-15.

    2.   The full names of the original parties are THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, and RAY ROSS, Defendant. There have been no changes in the parties.

    3.   Appellant was indicted for course of sexual conduct against a child, first degree, in violation of Penal Law 130.75(1)(b), course of sexual conduct against a child, second degree, in violation of Penal Law 130.80(1)(b), and endangerment of the welfare of a child, two counts, in violation of Penal Law 260.10(1). On June 30, 2016, appellant was sentenced, on the charge of course of sexual conduct in the second degree, to a determinate sentence of imprisonment of three years, and to the charges of endangering the welfare of a child to a term of imprisonment of one year on each conviction, all sentences to run concurrently.

    4.   The action was commenced on or about April 23, 2015, with the arrest of Ray Ross. Appellant was tried, with a jury, and was

-v-

sentenced, on June 30, 2016, to a total of three years' imprison-ment.

    5.   This a criminal conviction for course of sexual conduct against a child in the first degree, course of sexual conduct against a child in the second degree, and endangering the welfare of a child, two counts.

    6.   This is an appeal from a sentence imposed on June 30, 2016, on the charge of course of sexual conduct in the second degree, to a determinate sentence of imprisonment of a three years, and to the charges of endangering the welfare of a child to a term of imprisonment of one year on each conviction, all sentences to run concurrently.

    7.   The appeal is being made on the original record.  The original record is being transmitted to this Court pursuant to this Court's Order of October 18, 2016.


Dated:  Mineola, New York       BRUCE R. BEKRITSKY
       March 23, 2017        Attorney for Appellant
                         1551 Kellum Place
                         Mineola, New York 15501

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT
----------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

                        Respondent,        Indictment No. 1050N/15

       -against-                  Case No. 2016-08383

RAY ROSS,

                       Appellant.
----------------------------------------X

**ADDITIONAL STATEMENT REQUIRED
PURSUANT TO 22 NYCRR 640.3(c)**

    Defendant-appellant is now incarcerated in the Gowanda Correctional Facility in Gowanda, New York.

**STATEMENT REQUIRED PURSUANT TO
22 NYCRR 670.10.3(g)(viii)(A) and(B)**

    No order issued pursuant to CPL 460.50 is outstanding.

    There were no co-defendants.

Dated: Mineola, New York      BRUCE R. BEKRITSKY
       March 23, 2017         Attorney for Appellant
                       1551 Kellum Place
                       Mineola, New York 11501

## QUESTIONS INVOLVED

Did the appellant have competent counsel at trial? The trial Court found that he did have competent counsel.

Should the appellant have been provided a NYSIS record of a witness? The trial Court found that he should not have been given the record.

Was there the required corroboration of the crimes charges? The trial Court found that there was.

**FACTS**

Ray Ross, appellant, resided at 301 Coventry Road North, West Hempstead, New York, with his girlfriend Tara Johnson. Mr. Ross and Ms. Johnson occupied a room upstairs. Ms. Johnson's daughter and children occupied another room, and the complaining witness, named Millinia, her mother, Sarita, and her three sisters lived in the basement. Millinia's brother lived in another room upstairs, and her grandmother, the homeowner, was in a nursing home. For most of the time in question the only working television in the house was in the room which Mr. Ross and Ms. Johnson shared, and Millinia and other family members often would watch television there (T: 385, 442, 448, 450, 525-526, 745-747, 748-749, 755, 1307).[1]

Millinia had two cell phones at different times (T:483-484). Her father's brother, George Mickens, had bought the first phone in March, 2011, and had been paying for it (T:798, 848-850, 873, 874, 1075-1076, 1093-1096). In October of that year, when Millinia was in seventh grade, George Mickens stopped paying for the cell phone, and Mr. Ross took over the payments. In August, 2014, Sarita Johnson took the first phone away from Millinia when the mother suspected that there were inappropriate relations between appellant and Millinia. Mr. Ross then purchased the second cell phone for her (T: 483, 782-783, 798, 841, 876-877, 882, 1095-1098). Sometime in October Millinia called her mother on the second phone to tell her

---

[1]     Numbers in parenthesis preceded by the letter "T" refer to pages of the trial transcript.

-2-

that she had missed the school bus, and her mother confiscated that phone also (T:484, 853, 869).

According to the People's version of the facts, Mr. Ross, whom Millinia called "Ray Ray," sent cell phone text messages to Millinia, on August 3, 2014, at 2:38 AM (T: 385-386, 493, 799-800, 835-839, 854, 859, 883). The next day, between 4:45 PM and 9:15 PM, Mr. Ross sent about eighty text messages to Millinia. Mr. Ross had been taking Millinia on trips to Brooklyn, but there came a time when her mother no longer would allow it (T: 801). The allegations continued that Mr. Ross went into a rage and accused Sarita of not spending money on her daughter as he would, of Sarita's being jealous of Millinia's relationship with Mr. Ross, of his stating that he was the only one she could depend on, and demanding that Millinia make a choice and that she choose him over her mother (T: 386, 751, 755).

Millinia was confused, and, while she wanted to obey her mother, did not like that her mother and forbidden her to see Mr. Ross any more. In response Mr. Ross told her that he was "finished with her," and he was "done with her," because she wanted "to go with the enemy, her mother."

According to the People's case, Millinia told Ray Ray that she still loved him, and she sent him photos of their doing things together over the previous year. Mr. Ross told Millinia that he still loved her, but he demanded return of a clarinet he had loaned her to play in her middle school band (T: 387, 1307-1309).

-3-

Millinia testified that she threatened to cut Mr. Ross' penis off so that no one else could be "smashed by him," by which she meant have sex with him (T: 388).

The text messages went on in that vein for some time, until Millinia went upstairs to Ray Ray's room where he sexually abused her. He exposed his penis, he masturbated, and he groped her breasts and buttocks. He rubbed her vagina. He placed his mouth on her vagina and licked it. Because Millinia would not let him put his penis into her mouth or into her vagina, he had her flip over and would rub his erect penis on her buttocks until he would ejaculate onto her (T: 390-391, 757, 759, 762-763).

The People further alleged that Mr. Ross often took Millinia, alone, to Brooklyn to visit his family (T: 453, 455, 462, 560-562, 765-766, 781, 772-776, 776-779, 781, 802-806), with her mother's knowledge and consent (T: 544), until her mother attempted to put a stop to it (T: 470, 823). Mr. Ross allegedly committed similar sexual acts with Millinia several times in Mr. Ross' truck in the parking lot of the National Wholesale Liquidators store or the Western Beef store (T: 391, 767-768, 810, 818-819), upon their return from the visits.

At trial, appellant's attorney attempted to introduce evidence of Millinia's mother's having been arrested, but the Court refused to permit such questioning. It was counsel's theory that Ms. Johnson had been arrested for petit larceny and was now trying to obtain an Adjournment in Contemplation Of Dismissal (ACD) of that charge for herself in return for presenting evidence of Mr. Ross'

-4-

commission of a more serious crime (T: 511-512, 513, 514, 550, 1051). Defense counsel requested a NYSIS report for Sarita Johnson (T: 230, 246-247), but the People refused to turn a copy over to the defense (T:232) on the grounds that the NYSIS search resulted only in Family Court orders of protection but no criminal records for Sarita Johnson (T: 234-235, 359-360). The Court ruled that there was no NYSIS report which should have been provided to the defense pursuant to *Giglio v. United States*, 405 U.S. 150 (1972) or *Brady v. Maryland*, 373 U.S. 83 (1963) (T: 236-237, 356-357, 363-364). The Court later directed the assistant district attorney to look for information regarding interaction between Ms. Johnson and the police, or an arrest, or if there were a conviction or pending case (T: 351, 548-552, 554-557).

The defense was not permitted to question two prospective witnesses, Denise Sawyer, who could have discussed Sarita Johnson's credibility and her reputation in the community, and Sherman Roberts, father of Sarita Johnson's youngest child (T: 1186-1191). Several times defendant-appellant's attorney became aware of a document, asked for it, and was told that he could not have it, or that it could not be found, or that it was irrelevant (T: 599-606, 741-742, 1034-1036, 1078-1185).

No one ever witnessed any improper acts between appellant and Millinia. Her mother specifically said she saw nothing and did not question her sister about it when she heard of it (T: 544).

-5-

No evidence of the Millinia Johnson's age was introduced, either by birth certificate, school record, or even testimony by her mother (T: 1043-1044, 1045).

Appellant denied all of the allegations of wrongdoing (T: 1285, 1286). He testified that Millinia was like a daughter to him (T: 1278, 1282, 1296). He would call her to see if she were coming home or going to practice, and he attended parent-teacher conferences, even if he had to walk in the snow (T: 1296-1297). He admitted sending her text messages to inquire about her welfare, as he would for his own children or as he would communicate with Tara Johnson (T: 1301-1304, 1309). He provided lunch for Millinia, her siblings, and her cousins (T: 1297-1298). He admitted taking her and her sister, Mercedès, or Millinia alone, on trips to Brooklyn (T: 1282, 1306), and that his former wife would style their hair (T: 1109, 1283). He said he was very hurt when he was told to stay away from Millinia (T: 1288-1289, 1294). He denied being alone with Millinia or molesting her, and he denied any specific sexual contact with her (T: 1290, 1300).

Mr. Ross further testified that he and Tara Johnson were paying for everything at the house, and the other people there were squatting and didn't appreciate it (T: 1293).

Defendant appeals, and seeks an order reversing the finding of guilty.

## POINT I
## DEFENSE COUNSEL WAS
## NOT COMPETENT

It is axiomatic that a defendant in a criminal trial is entitled to competent Counsel, *People v. Leach*, 108 A.D.2d 871, 85 N.Y.S.2d 769 (2nd Dept., 1985). While disagreeing with appellant's allegation that his attorney had acted improperly, the Third Department said that it stands to reason that in order to find ineffective assistance of counsel, it must appear that counsel either did something that a prudent and competent attorney would not have done or failed to do something that a prudent and competent attorney would have done in the same circumstances, *People v. Evans*, 1999 N.Y. Slip Op. 70, 84 N.Y.S.2d 648 (3rd Dept., 1999).

"[T]he right to counsel is the right to the effective assistance of counsel," *McMann v. Richardson*, 397 U.S. 759, (1970). From the beginning of the cases holding that counsel must be appointed for defendants unable to afford to retain a lawyer, the United States Supreme Court has indicated that appointment must be made in a manner that affords "effective aid in the preparation and trial of the case," *Powell v. Alabama*, 287 U.S. 45, 71-72 (1932); *Glasser v. United States*, 315 U.S. 60, 70 (1942). Ineffective assistance provided by retained counsel provides a basis for finding a Sixth Amendment denial in a trial.

A much more difficult issue is presented when a defendant on appeal or in a collateral proceeding alleges that his counsel was incompetent or was not competent enough to provide effective

-7-

assistance. It was not until 1984, in *Strickland v. Washington*, 466 U.S. 668 (1984), that the Court articulated a general test for ineffective assistance of counsel in criminal trials and in capital sentencing proceedings.

In *McMann, supra*, the Court observed that whether defense counsel provided adequate representation, in advising a guilty plea, depended not on whether a court would retrospectively consider his advice right or wrong "but on whether that advice was within the range of competence demanded of attorneys in criminal cases." See also *Tollett v. Henderson*, 411 U.S. 258, 266-69 (1973); *United States v. Agurs*, 427 U.S. 97, (1976).

There are two components to the test: deficient attorney performance and resulting prejudice to the defense so serious as to bring the outcome of the proceeding into question. Although the gauge of effective attorney performance is an objective standard of reasonableness, the Court concluded that "[j]udicial scrutiny of counsel's performance must be highly deferential." Strategic choices made after thorough investigation of relevant law and facts are "virtually unchallengeable," as are "reasonable" decisions making investigation unnecessary, *Strickland, supra*, and decisions selecting which issues to raise on appeal, *Jones v. Barnes*, 463 U.S. 745 (1983). Providing effective assistance is not limited to a single path. No detailed rules or guidelines for adequate representation are appropriate: "Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making

-8-

tactical decisions," *Strickland, supra*. In order to establish prejudice resulting from attorney error, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome," *Strickland, supra*. This standard does not require that "a defendant show that counsel's deficient conduct more likely than not altered the outcome in the case," *Strickland, supra*.

In *Strickland* the attorney's decision to forego character and psychological evidence in the capital sentencing proceeding in order to avoid evidence of the defendant's criminal history was deemed "the result of reasonable professional judgment," and prejudice could not be shown because "the overwhelming aggravating factors" outweighed whatever evidence of good character could have been presented. In *Lockhart v. Fretwell*, 506 U.S. 364 (1993), the Court refined the Strickland test to require that not only would a different trial result be probable because of attorney performance, but that the trial result which did occur was fundamentally unfair or unreliable. Justia.com, *Portal Website, US Law, Offenses Against the United States, Rights of Accused in Criminal Prosecutions, Sixth Amendment, Criminal Prosecutions*.

In the case at bar, appellant was denied the benefit of counsel who understood the issues and raised them. While counsel is not required to raise every appealable issue, counsel should be expected to raise an issue which could make a difference in the

POINT II
THE DEFENSE SHOULD HAVE BEEN
GIVEN A WITNESS'S CRIMINAL RECORD

Criminal Procedure Law 240.45(1) provides:

1. After the jury has been sworn and before the prosecu-
tor's opening address, or in the case of a single judge
trial after commencement and before submission of
evidence, the prosecutor shall, subject to a protective
order, make available to the defendant: ....
(b) A record of judgment of conviction of a witness the
people intend to call at trial if the record of convic-
tion is known by the prosecutor to exist;
(c) The existence of any pending criminal action against
a witness the people intend to call at trial, if the
pending criminal action is known by the prosecutor to
exist.

The Supreme Court, in *People v. Buckley,* 501 N.Y.S.2d 554, 131

Misc.2d 744 (Supreme, Monroe, 1986) said:

Criminal Procedure Law § 240.45 provides for discovery,
upon trial, of prior statements by, and criminal histo-
ries of, witnesses. Specifically, the People shall make
available to the Defendant a record of judgment of
conviction, subd. 1(b), and the existence of any pending
criminal action, subd. 1(c), if known by the prosecution
to exist. ... The Legislature intended to codify the
landmark case of People v. Rosario, 9 N.Y.2d 286, 213
N.Y.S.2d 448, cert. denied, 368 U.S. 866, 82 S.Ct. 117,
7 L.Ed.2d 64 (1961), by promulgating this provision. ...
Governor Carey applauded the passage of the new discovery
statute as a procedure designed to "reduce the element of
surprise in criminal trials" and the inherent unfairness
in such surprise. He viewed the procedure as "evenly
balanced" thus avoiding "any undue advantage to either
side in a criminal proceeding." Id. at 1801 501 N.Y.S.2d
554.

In *Giglio, supra,* (see statement of Facts) an assistant U.S.

attorney struck a deal with an essential witness, promising that he

would not be prosecuted for the crime if he testified against

Giglio. The Court noted that the government's case relied almost

entirely on the witness's testimony, and without it, there could

have been no indictment, and no evidence to take to a jury. The

-11-

Court found that this made the witness's credibility an important issue; any evidence of an agreement or understanding with respect to his future prosecution was relevant to his credibility, and the jury was entitled to know about it.

In the case at bar, the appellant's attorney repeatedly asked the Court to have the People provide the NYSIS information for a principal witness, Sarita Johnson, mother of the complaining witness, Millinia Johnson. He should have had access to that material in order to further examine the possibility of discussion of pending charges against the witness and whether or not she was offered an adjournment in contemplation of dismissal (ACD) by charging Mr. Ross with committing crimes against her daughter. There was a supposed incident regarding Mrs. Johnson as late as some time in 2014, and she made her complaint regarding her daughter in August and October of 2014.

One of the defense theories was that Mrs. Johnson coached and instructed her daughter, concocted the charges against Mr. Ross, and had her daughter give false statements (T: 230). Sarita Johnson's criminal history, her reliability for truthfulness, and her possible motive -- obtaining an ACD for herself -- were issues which the defense should have been allowed to explore and present to the jury. There was information that Mrs. Johnson had been involved in an incident with the Rockville Centre Police Department in 2011 in which she was charged with a misdemeanor and of at least three convictions in the criminal justice system (T: 549). As in *Giglio*, the possibility of Mrs. Johnson's being granted an ACD in

-12-

return for testimony against appellant made Mrs. Johnson's credibility an important issue; any evidence of an agreement or understanding with respect to her sentence (or lack thereof, as she was said to have been granted an ACD) was relevant to her credibility, and the jury was entitled to know about it.

Similarly, the defense should have been permitted to question Denise Sawyer, who could have discussed Sarita Johnson's credibility, and her reputation in the community.

No information which could have demonstrated the witness's credibility should have been withheld from the jury. Had this evidence been presented to them, they may not have believe Mrs. Johnson, and their verdict may have been in favor of the appellant.

## POINT III
## THERE WAS NO CORROBORATION
## OF THE ALLEGED OFFENSE

Penal Law §130.16 says:

> A person shall not be convicted of any offense defined in this article of which lack of consent is an element but results solely from incapacity to consent because of the victim's mental defect, or mental incapacity, or an attempt to commit the same, solely on the testimony of the victim, unsupported by other evidence tending to:
> (a) Establish that an attempt was made to engage the victim in sexual intercourse, oral sexual conduct, anal sexual conduct, or sexual contact, as the case may be, at the time of the occurrence;  and
> (b) Connect the defendant with the commission of the offense or attempted offense.

By definition, Millinia was unable to consent to some of the acts complained of, because she was underage at the time they allegedly occurred. Pursuant to Penal Law §260.11, the statute applies to the charges brought both pursuant to Penal law 130.80(1)(b) and 260.10(1).

In *People v. Pawley*, 71 A.D.2d 307, 23 N.Y.S.2d 69 (4th Dept., 1979) the Court found that only evidence tending to establish that an attempt was made to engage the alleged victims in deviate sexual intercourse and tending to connect the defendant with the commission of the acts was that of the two underage victims. (Counts 1, 2, 5 and 6 of the indictment reinstated, and order modified on other grounds and affirmed.) On the other hand, in *People v. De Berry*, 76 A.D.2d 933, 429 N.Y.S.2d 268 (2nd Dept., 1980), the thirteen year old victim's account was corroborated by (1) her mother's testimony that defendant was with her that evening, (2) the testimony of a cab driver that he drove defendant and a young girl to the vicinity of the rooming house, (3) the introduction

-14-

into evidence of the rooming house register which defendant had signed with his and the victim's first names, (4) the testimony of a doctor at Queens General Hospital that there was sperm in the victim's vagina, trauma to her hymenial ring, and a small hematoma at the bottom posteria portion of the vagina, consistent with forcible sexual intercourse, and (5) the fact that semen was found on the victim's panties. *Cf, People v. Dickson*, 112 A.D.2d 312, 491 N.Y.S.2d 759, (2nd Dept., 1985) defendant's admissions to police officers despite his denial at trial of acts constituting sexual crime against twelve year old sufficient corroboration, *People v. Brown*, 66 A.D.2d 223, 413 N.Y.S.2d 482 (3rd Dept., 1979) circumstantial evidence sufficient to corroborate sexual act against an underage person.

While *Pawley, supra*, was modified and affirmed on other grounds, the principal that corroboration is required in a case such as this remains valid. Unlike *De Berry, Dickson*, and *Brown, supra,* there was insufficient admissible evidence to establish corroboration.

In the case at bar the statute applies, because the complainant alleged that the appellant wanted to "smash" her, but which she meant have sexual relations with her. Therefore, she was claiming, as required by the statute, that he was making "an attempt ... to engage the victim in sexual intercourse." Further, Penal Law §§130.75 and 130.85 refer to engaging in acts of sexual conduct. Here, the only direct evidence of the acts complained of was the testimony of the complainant, who was underage when some of the

-15-

acts took place. While there was testimony regarding the complain-
ant's going to visit with the appellant's former wife and children
and to have her hair styled at the former wife's home, no corrobo-
rating evidence was offered that anything improper happened.
Appellant's taking the complainant to visit his children and taking
them on outings, all at his expense, is not wrongful, nor does it
suggest wrongfulness. No one testified to seeing the two alone
together in a white truck in a parking lot, and no evidence was
offered showing any semen anywhere in the truck or on complainant's
clothes. Buying ice cream for a child is an act of a loving, caring
friend or relative, not that of a sex offender.

It was true that the complainant had one of two cell phones at
various times during the period of the alleged contacts, and the
appellant bought one of them for her, and while it also is true
that the transcripts of the text messages may indicate a close
relationship between them, the transcripts of the text messages
between the complainant and the appellant do not indicate any
sexual activity between the two. There is mention of meeting each
other, of loving each other, even of a severe disagreement between
the complainant and her mother, supported by the appellant, but
there is no description of any of the acts which complainant
described in her testimony. While it may be argued that the
involvement between the complainant and the appellant was inappro-
priate, it is also consistent with the care and concern of an
adoptive or surrogate uncle for a niece. Although the complainant
and the appellant were not related by blood or affinity, the

-16-

appellant did have a long relationship with the complainant's aunt, with whom he lived for many years in the same house as the complainant. For a considerable time the only television set in the house was in the room which the appellant and complainant's aunt shared. Therefore, it was natural that a twelve year old girl, wanting to watch television, would find herself in the appellant's room, perhaps sometimes alone with him. It may be conceded that, as the complainant matured, it would have been preferable for the door to the room to have been open, or other precautions taken to avoid the appearance of impropriety, but this alone does not corroborate sexual misconduct of the type alleged.

In his testimony appellant described his affection, love, and concern for a girl whom he saw at least as a niece if not as one of his own children. The appellant denied any wrongdoing, and made no statement of any kind to the contrary to anyone.

The requisite corroboration was lacking.

-17-

## CONCLUSION

The appellant did not have competent trial counsel who would have raised an essential issue. Had counsel done so, the result in this case would have been different. The defense should have been given evidence of a witness's NYSIS record. There was no corroboration of the alleged crime of course of sexual conduce against a child in the second degree. For all of these reasons, the finding of guilty should be reversed, and the case should be dismissed.

Respectfully submitted,
BRUCE R. BEKRITSKY
1551 Kellum Place
Mineola, New York 11501
516 742-8055


Dated:     Mineola, NY
           March 23, 2017

-18-

## CERTIFICATE OF COMPLIANCE

Pursuant to 22 NYCRR 670.10.3(f), this brief was prepared on a computer. The typeface is Courier New, 12 point, double line spacing, except for titles, direct quotes, signatures, and other places where single line spacing was used. This brief contains 4,825 words, including titles, based on the word count of the word processor used.

_____
Bruce R. Bekritsky

Dated:    Mineola, NY
          March 23, 2017

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION:   SECOND DEPARTMENT
----------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,

                           Respondent,                  AFFIRMATION OF SERVICE

        -against-

RAY ROSS,

                            Appellant.
----------------------------------------X
STATE OF NEW YORK   )
                    ss.:
County of Nassau   )

     BRUCE R. BEKRITSKY, an attorney admitted to practice in the State of New York, affirms under penalty of perjury that:

1    I am attorney of record for the appellant.

2    On March   , 2017, I served the within Brief for Appellant by delivering a true copy thereof to the office of Madeline Singas, Esq., Nassau County District Attorney, attorney for the People of the State of New York, at Appeals Bureau, 262 Old Country Road, Mineola, New York 11501, the address designated by the People's attorney for that purpose, and by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to Ray Ross, appellant, at Gowanda Correctional Facility, PO Box 311, Gowanda, New York 14070-0311, the address designated by appellant for that purpose.

Dated:   Mineola, New York
        March   , 2017    _____

                       Bruce R. Bekritsky