Courtesy copy, original filed in ECF
Docket Number CV 18-07219 (JS)
Document No. 7

1  SUPREME COURT OF THE STATE OF NEW YORK

2  COUNTY OF NASSAU : CRIMINAL TERM PART 47

3  ------------------------------------------X   Indictment
   THE PEOPLE OF THE STATE OF NEW YORK,        :   No. 1050N-15
4                                              :
           -against-                           :   NYSID No.
5                                              :   13048712P
   RAY ROSS,                                   :
6                                              :   CRSXCONCH2
                           Defendant.          :
7  ------------------------------------------X   Sentence

8                           June 30, 2016

9                           262 Old Country Road
                            Mineola, New York
10

11  B E F O R E:

12       HONORABLE TERENCE P. MURPHY,
              Acting Supreme Court Justice
13

14  A P P E A R A N C E S:

15       HON. MADELINE SINGAS
         Nassau County District Attorney
         For the People
16       BY:  ANTHONY R. PERRI, ESQ.,
                   Assistant District Attorney
17                 of Counsel.

18       SCOTT B. ZERNER, ESQ.
         Attorney for Defendant
19            277 Broadway - Suite 408
              New York, New York  10007
20

21            *           *           *

22

23                       LISA H. WINKLER
                         Senior Court Reporter

24

25

                                                      lhw

1          THE CLERK:  On the sentencing calendar,

2    indictment 1050N of '15, People versus Ray Ross.

3          Mr. Ross, step up with your attorney.

4          Appearances for the People.

5          MR. PERRI:  Assistant District Attorney

6    Anthony Perri.  Good morning, your Honor.

7          THE COURT:  Good morning.

8          THE CLERK:  Representing Mr. Ross.

9          MR. ZERNER:  Scott Zerner, Z-E-R-N-E-R,

10   277 Broadway, Suite 408, New York, New York, for

11   Mr. Ross.  Good morning, your Honor.

12         THE COURT:  Good morning.

13         THE CLERK:  Sir, you are Ray Ross; is that

14   correct?

15         THE DEFENDANT:  Yes, sir.

16         THE CLERK:  Mr. Ross, you appear here with

17   your attorney, Mr. Zerner, for sentence; is that

18   correct, sir?

19         THE DEFENDANT:  Yes, that's correct.

20         THE CLERK:  Counsel, is your client ready for

21   sentencing?

22         MR. ZERNER:  He is, your Honor.  I do have

23   three more letters that I'd like to provide to your

24   Honor.  They were only delivered to me in the last 24

25   hours.  I have copies.

Proceedings                    3

1      This is for the Judge.  This is for

2   Mr. Perri.

3      THE CLERK:  Do People wish to be heard before

4   sentence is imposed?

5      MR. PERRI:  Yes, your Honor.  The People did

6   serve notice there would be two victim impact

7   statements from the mother of the victim, as well as

8   the child.  They decided to do that in the form of a

9   letter, which I ask to read into the record.

10      THE COURT:  Very good.

11      MR. PERRI:  The first is from Ms. Sarita

12   Johnson, addressed to the Court.

13      Dear Judge Murphy, I am writing you as the

14   mother of Millinia Johnson, who was the victim in this

15   case.

16      What Ray Ross did to my daughter affected her

17   emotionally.  I feel that the trauma that she

18   experienced has caused her to be fearful, closed up,

19   and still unable to fully heal.  Though she is still

20   social, there are a lot of things underneath that she

21   still deals with.  There is a wall from this

22   experience.  She is closed up and melancholy or

23   depressed below the surface.  She is unable to trust

24   other people to work through what happened to her.

25      As a family, we are also now less trusting of

lhw

Proceedings                    4

1    people.  It has shocked and devastated us.  We are

2    still trying to fully absorb what took place in our

3    home, and just trying to get through it day by day.

4              Going to trial in this case was for my

5    daughter extremely stressful.  Reliving the accounts of

6    what took place was mortifying for her.  It was

7    emotionally taxing to bring it all up, a series of

8    horrible experiences, especially for a child, given the

9    sexual nature of the crimes.

10             Putting her through the battery of

11   cross-examination questions and making a child believe

12   that she should be distrusted was extremely painful and

13   difficult.  No mother wants her daughter to go through

14   this, but I am proud of her for standing up for herself

15   and telling the jury what happened.

16             Instead, the defendant never took

17   responsibility for his actions, and it took a jury

18   convicting him of a felony to hold him accountable.

19   Therefore, I believe that he deserves the maximum

20   punishment allowed.  Years in prison will gave him time

21   to appreciate what he did to Millinia, to really think

22   about his crimes, how it affects a young person's life

23   to be sexually abused by someone she trusted.

24             Ray Ross betrayed her and our family.  It is

25   sickening that he would attempt to do something like

lhw

1    that to a 12-year-old girl who admired him.

2                Sentencing the defendant to prison will also

3    give us peace, knowing we are safe, and that Millinia

4    can grow up without the defendant in her life.  I think

5    it is also possible that Ray Ross would do this again

6    to another girl if he had the chance.  So I ask the

7    Court to sentence Ray Ross to the maximum amount of

8    jail allowed.

9                I thank the Court for reading my letter and

10   for considering my thoughts.

11               Sincerely, Ms. Sarita Johnson.

12               THE COURT:  Thank you.

13               MR. PERRI:  The second letter, your Honor, is

14   from Millinia Johnson.

15               Dear Judge Murphy, I am writing you to tell

16   the Court what my feelings are about Ray Ross's

17   sentencing.

18               What Ray Ross did to me was very wrong and

19   stopped me from having a normal childhood.  No girl

20   should be put in the position he caused me to be in.  I

21   was too young to make adult choices.  He convinced me

22   that I loved him, which was wrong.

23               I am glad that I testified at the trial.  It

24   was the first step in putting this experience behind

25   me.  But it was difficult because of how awkward it was

Proceedings                              6

1    to have Ray Ross staring at me as I was talking about

2    what happened.  I also felt embarrassed to tell the

3    jury, a bunch of strangers, all the sexual acts he did

4    to me and he had me do.  The mean tone of the defense

5    lawyer when he questioned me also made everything

6    worse.

7            Before Ray Ross started sexually abusing me,

8    I thought of him like an uncle, but after hundreds of

9    times of him abusing me and now realizing it was wrong,

10   he is just a criminal who used me to get the perverted

11   stuff that he wanted.

12           Ray Ross touched my vagina, my breasts, and

13   my butt.  He put his mouth on my vagina.  He had me

14   touch his penis, and he rubbed his penis on my butt and

15   ejaculated on me.  He did these things to me many

16   times.

17           Because of what he did, I am asking you to

18   sentence him to the longest time in jail possible.

19   What the defendant did affected not just me, but my

20   whole family.  We are all more distant now.  I also

21   worry that he would do this to another girl if he had a

22   chance, so it is important that Ray Ross also be a sex

23   offender.

24           Thank you for reading my letter.

25           Sincerely, Millinia Johnson.

                                              lhw

1          Your Honor, the People would recommend to the

2     Court that the defendant be sentenced, upon his

3     conviction on the Class D violent felony, course of

4     sexual conduct against a child in the second degree, to

5     the maximum sentence allowed by the law, seven years.

6          People's recommendation to the Court is

7     based, first, on the fact that the defendant could have

8     spared the victim.  He could have taken ownership of

9     his facts.  He could have taken a plea to charges to

10    spare her from the pain of having to testify about the

11    embarrassing and emotionally devastating acts that were

12    perpetrated against her in open court before a jury in

13    the public.

14          In this testimony, your Honor, that was

15    corroborated, the text messages and phone records, she

16    described hundreds of incidents of oral sex, with the

17    defendant rubbing his penis on her buttocks.  Defendant

18    ejaculated on her, and she described to the Court the

19    defendant's semen's appearance and its temperature at

20    the time of the actual act.

21          What she described to the Court more than

22    satisfied the requirement of the D felony sex abuse --

23    course of sexual conduct against a child in the second

24    degree.  The length of time she described to the Court

25    more than exceeded the minimal times required by that

lhw

1    statute.

2                In this case, your Honor, the defendant was

3    the sole participant.  People's position is, there are

4    no mitigating factors present that would warrant

5    anything but an upstate period of incarceration.

6                Secondly, your Honor, the Court should take

7    into consideration the defendant himself, though he did

8    not have to, chose to take the stand.  And his

9    testimony, People would submit to the Court, was, and

10   the jury found it to be, incredible.

11               Defendant sat on the stand and testified that

12   he denied only the text messages -- out of all the text

13   messages put before him, only those text messages that

14   involved suggestions of sexual acts, specifically the

15   word smashing, but acknowledged all other texts were

16   sent by him, except for those.

17               He also testified on the stand, his texting

18   and calling the victim at all hours of the day or night

19   was perfectly normal.  He claimed the texts that your

20   Honor was able to view and the jury viewed, he claimed

21   they are all part of him trying discipline a child.

22               His statements were completely disingenuous,

23   show a lack of respect to the oath, show a lack of

24   respect to the Court, and should be taken into

25   consideration by the Court in sentencing the defendant.

                                                            lhw

Proceedings                    9

1        In light of the statements by the victim and
2   her mother, in light of the allegations, testimony in
3   court that was corroborated, the People recommend to
4   the Court the defendant be sentenced to the maximum
5   amount of time under law of seven years, as well as a
6   stay-away order of protection and registration pursuant
7   to statute, your Honor.
8                    THE COURT:  All right.
9                    THE CLERK:  Anything further, People?
10                   MR. PERRI:  No.
11                   THE CLERK:  Does counsel wish to be heard?
12                   MR. ZERNER:   Thank you very much, your Honor.
13       Your Honor, I have many things to say, and
14   when I am done speaking, my client would like to speak
15   to the Court as well.
16       For almost the entire month of February, we
17   tried this case in front of your Honor, Mr. Perri and
18   myself.  We heard from a multitude of witnesses, 12
19   different witnesses, and you heard very contrasting
20   testimony about what happened, if it happened, when it
21   happened, and what level there was to believe what, if
22   anything, happened between my client and the
23   complainant in this case.
24       Your Honor, it sounds that, according to the
25   letters that Mr. Perri has read into the record, that

                                                    lhw

1    one of the problems that the complainant and her

2    mother, and perhaps the People as well, have is that my

3    client exercised his rights under the United States

4    Constitution and under the United States Bill of

5    Rights.  They were not pleased that my client asserted

6    his Fourth, Fifth, and Sixth Amendment rights in this

7    courthouse.

8                Your Honor obviously understands, my client

9    had the right to demand that his accuser appear before

10   him and before a jury of his peers.  That's what

11   happened.  My client should not be punished for

12   availing himself of the United States Constitution, and

13   the People should not implore the Court to ask for a

14   maximum sentence.  That is what is disingenuous.

15               My client is a 56-year-old man who has never

16   been charged with a crime.  56 years old.  He's been an

17   adult for 40 years.  Never been charged with a crime

18   until now.  He was charged with these crimes, and the

19   jury came back with a not-guilty verdict on the top

20   count and a guilty verdict on the lesser counts.

21               Your Honor obviously has a huge amount of

22   latitude in this situation.  Combining the fact that my

23   client has no convictions with the fact that the

24   highest level conviction here was a D, as in dog, D

25   felony, your Honor has the complete and total latitude

lhw

1       to issue what sentence you think is appropriate.

2                   Now, your Honor, you see a multitude of

3       people in the back of the courtroom, and almost all of

4       these people that are here are here for Ray Ross.   You

5       heard from some of them during the course of the trial.

6       Others were prepared to testify and your Honor ruled,

7       either for expediency sake or for duplicative sake --

8       and I readily admit, I can be duplicative and probably

9       will be during the course of this speech to your

10      Honor -- that some of those people would not be heard.

11                  But I ask you to think to yourself, who are

12      all these people?  And you heard, and I know you will

13      recall, that this is a blended family that we are

14      hearing about, that we were hearing about, and that

15      still exists here.

16                  You heard testimony that my client provided

17      food as well as entertainment not just to the

18      complainant here, but to her sisters, who you never

19      heard testify, and that his actions, not in any kind of

20      devious way, but in a kind, avuncular way, to use the

21      uncle term that's already come up, he included several

22      of the children of Ms. Sarita Johnson in his life, and

23      these people, young adults, as well as his children,

24      his biological children, spent time together at movies,

25      at the aquarium, at the beach, at the park, wherever.

Proceedings                          12

1           And you heard testimony that my client is a

2      huge, huge influence on not just his own children, who

3      are here in the courtroom and have provided letters to

4      your Honor, not just to his current long-time paramour,

5      the aunt of the complainant --

6           And please remember that the aunt of the

7      complainant testified before your Honor, before the

8      jury, when we tried the case back in February.  She is

9      and always has been with Mr. Ross.  She does not

10     believe the allegations that her niece has put forward.

11     She brought forth to you and to the jury reasons that

12     her sister would lie and that her sister would put her

13     daughter, the complainant in this case, up to telling

14     falsehoods, and that's what happened here, your Honor.

15          All of that being said, to remove Ray Ross

16     from his family and from society will have a

17     deleterious effect.  It will only harm.

18          Now, Mr. Perri asked about an order of

19     protection.  Of course we have no objection to an order

20     of protection.  There has been an order of protection

21     in effect in this case going back to the beginning, in

22     April of 2015, when my client surrendered himself at

23     the precinct.  And from then until now, 14 months

24     later, there has never been any allegation that there

25     has been any contact between Mr. Ross and the

1    complainant in this case, and there never will be, your

2    Honor.

3                There is no allegation of it.   There is no

4    reason for it.   Mr. Ross has no contact with those

5    folks, and they can and should feel comfortable living

6    the rest of their lives, that they came to open court,

7    they told a story, and that's what it was, a story.   It

8    was not true, your Honor.

9                And, again, you need to think of the

10   two-by-two box that they learn sometimes the first day

11   of law school, that maybe truths were told by

12   truth-tellers, maybe falsehoods were told by liars, and

13   maybe there is a combination.   Maybe some truths were

14   told by liars and maybe some falsehoods were told by

15   truth-tellers.   It was for the jury to decide, and now

16   it's for you for decide what the actual sentence will

17   be.

18                The order of protection, obviously, we have

19   no problem with that.   Unfortunately for Mr. Ross, he

20   will be labeled as a sex offender for the rest of his

21   life under Megan's Law, SORA, as it's now called, and

22   he has to live with that, and that Scarlet letter will

23   follow him until the day he dies.   And I explained to

24   him what that is and what his responsibilities will be,

25   and he understands and, frankly, hates that that is

1    something that is being thrust upon him, but he

2    understands that is the result of the verdict in this

3    case.

4            But beyond that, with your Honor having the

5    opportunity to decide what, if anything, else will

6    happen, I would ask your Honor to consider what a hard

7    working man this person is.  He's been working in

8    private sanitation for his entire career.  He wakes up

9    long before dawn, and you heard testimony about that.

10   He's worked different shifts and he's ready, willing,

11   and able to work to stay out of jail.

12           And I ask you consider at this time, instead

13   of a jail sentence, that your Honor consider a

14   community service alternative, where this man, who is a

15   man who is part of his community -- I had ready to

16   testify his pastor, who was going to testify that this

17   man tithes.  He gives 10 percent of his meager salary

18   to his church.  He is active in his church.  You heard

19   testimony sometime the complainant would attend church

20   with her aunt and with Mr. Ross.

21           You heard tons of testimony about Mr. Ross's

22   impact on his family, the positive impact on his entire

23   family and his extended family.  So, your Honor,

24   consider a community service alternative to any type of

25   incarceration and to monitor him so that society and

                                                    lhw

Proceedings                      15

1    your Honor and the community can be certain that there

2    would be absolutely no future victims of anything at

3    all.  Put him on probation.  Let him be on probation.

4    Give him what we commonly call a split sentence with a

5    community service alternative.  He's being punished.

6    His whole family has been torn apart.

7             Our view of what happened is, they were torn

8    apart because two sisters had a huge schism, those two

9    sisters being the paramour of Mr. Ross and the mother

10   of the complainant.  And, unfortunately, the impact and

11   the mushroom cloud of that has now spread out to

12   involve the criminal justice system and all the people

13   heard from.

14             But now you can do what I would think would

15   be something that would solve society's thoughts about

16   what to do with Mr. Ross at this point after the

17   compromise verdict, as well as when the district

18   attorney asks for the maximum sentence on almost

19   everything that comes across their desk.

20             The question then becomes, well, who should

21   actually get that maximum sentence?  This is not a man

22   who has been in and out of jail for the last 40 years.

23   This is a man who only now is being accused, let alone

24   convicted of anything.  That's not the man who deserves

25   the maximum sentence.

                                              lhw

1            I'm sure you have had these conversations, as

2     did I when I was assistant district attorney, and

3     people say, well, what's the maximum sentence for X,

4     for a marijuana charge?  Say the maximum is a year and

5     the person, you know, the fright comes into their face

6     and everyone else's.  And that's the truth.   The

7     maximum is a year, except that commonly there is a

8     progression of what happens as far as sentencing, and

9     that progression is seen within the district attorney's

10    offers of plea bargain and within the Court, the

11    Judge's decision of what sentencing should be.

12            So the plea -- set aside the thought that the

13    maximum sentence is anywhere near warranted in this

14    case, and think to yourself about the family involved,

15    the family that has been alleged to have been harmed,

16    and that there are convictions on the lesser counts of

17    being harmed.

18            They will never see or hear from Mr. Ross

19    again.  You are assured of that by the order of

20    protection and you are assured of that by probation.

21    If there is any violation of that, there will be

22    immediately a criminal contempt charge and a violation

23    of probation, and Mr. Ross would be right back in front

24    of you and have to answer for that.

25            Let him work to stay out of jail.  I ask you

lhw

Proceedings                    17

1    consider sentencing -- I believe 840 hours of community

2    service would be that six months of jail, which would

3    become -- two-thirds of that, I believe, is 120 days,

4    times seven, I believe is 840, if my math is correct.

5    I think that that's a reasonable sentence, that he stay

6    working to support his family.  Let him stay as part of

7    his family.

8              I hope you have read the letters, some of

9    which I provided when sentencing was last on, some I

10   know I only provided a few minutes ago.  But they all

11   say the same thing, that this is a man who is good for

12   his family, a man who is needed by these people.  You

13   saw these people during the course of the trial.

14             Thank you very much for your judicious

15   thought process of listening to me, of listening to the

16   testimony back in February.  Thank you for considering

17   these different types of sentences, being a mixed

18   sentence.  And I thank you for now listening to

19   Mr. Ross, who would like to address you directly.

20             THE COURT:  Thank you, Mr. Zerner.

21             THE CLERK:  Mr. Ross, anything you wish to

22   say before the Court imposes sentence?

23             THE COURT:  Mr. Ross, you can remain seated.

24   You show no disrespect by sitting and speaking.

25             THE DEFENDANT:  Hello, your Honor.  I just

                                                    lhw

Proceedings                    18

1    want to tell you that I just want leniency.  I'm a man

2    that works, and me and my daughter just bought a house,

3    taking my grandkids, all these kids, and these things

4    that happened to me just blew me away.

5         I have a lot of people that need me, and I

6    take care of these people and they cannot handle the

7    debt and stuff that we are in.  I have -- I take care

8    of them and want to continue doing that so that's my

9    future, going to a nursing home Sunday after church and

10   feeding people and go look out.  These people needs me.

11   I just want to continue to do good and ask you for

12   leniency, your Honor.

13        And I have never been in trouble in my life.

14   These accusations is killing me.  It tore me apart,

15   tore my family apart.  I'm not that kind of person, and

16   I want to continue to help people and provide for my

17   family.

18             THE CLERK:  Anything further, Mr. Ross?

19             THE DEFENDANT:  No.  No, sir.

20             THE CLERK:  Then please give your attention

21   to the Court.

22             THE COURT:  Thank you, Mr. Ross.

23        Have both counsel had the opportunity to

24   review the Probation Department's presentence report?

25             MR. PERRI:  Yes, your Honor.

Proceedings                    19

1          MR. ZERNER:  Yes, your Honor.

2          THE COURT:  Any exceptions to that report

3    from either counsel?

4          MR. PERRI:  No exceptions to the facts

5    reported in the report, your Honor.

6          MR. ZERNER:  The only thing I would state,

7    your Honor, about the probation report is, Mr. Ross was

8    contacted by the author of the probation report on Good

9    Friday.  Mr. Ross is a church-going person.  He was

10   called about that on that holy day.  He tried to

11   accommodate the schedule of the probation officer who

12   was writing that report by immediately going and

13   talking with her, and only after he had spoken to the

14   probation officer that then he contacted me.

15          Now, I think that all of us in this room

16   understand that a probation officer, somewhat like a

17   police officer, will sometimes just let a person talk

18   and let a person believe what the probation officer

19   thinks is best for the report or for the charges,

20   et cetera.  Again, Mr. Ross stood before that probation

21   officer as someone who had never dealt with a probation

22   officer before.  40 years as an adult, never being

23   charged with a crime, never speaking to a police

24   officer, probation officer, anything.  Then the report

25   was written.

Proceedings                    20

1          Frankly, Mr. Ross called me afterwards and

2    said, this is the nicest person.  There is no way she's

3    going to recommend anything but being on probation, and

4    that's not what the report shows.  And I think as an

5    educated reader, I understood that and I know you

6    understand that and I know Mr. Perri understands that,

7    but Mr. Ross did not a hundred percent understand who

8    he was speaking to or what he was saying to her.

9          All that being said, your Honor, again, based

10   on what I have put before your Honor, I'd ask you

11   sentence my client not to any jail time, but a

12   community service alternative.  If your Honor does

13   think that jail time is the way to go, I ask it be

14   local so my client can receive visits from his family.

15         Again, this is a person who has never done

16   any jail time before.  Please do not send him upstate.

17         THE COURT:  Thank you.

18         Just so the record is clear, the Probation

19   Department's recommendation was for a probationary

20   sentence of five years with the special condition of

21   six months incarceration.  The Court is not obligated

22   to follow that recommendation, but it accepts it and

23   considers it, as the Probation Department is an arm of

24   the Court, and the Court relies on the Probation

25   Department for its input and information that it

                                                    lhw

1    provides.

2              A couple of things.  The charges against

3    Mr. Ross are no longer allegations.  The People proved

4    the allegations beyond a reasonable doubt, as shown by

5    the jury's verdict.

6              The jury was the judges of the facts.  They

7    heard the testimony from the People, they heard the

8    testimony from the defense, and they made a decision.

9    They determined that Mr. Ross engaged in a course of

10   sexual conduct against a child in the second degree, as

11   well as endangered the welfare of that same child in

12   two distinct periods of time.

13             This Court is not retrying the case here.

14   This Court's responsibility is to impose an appropriate

15   sentence for the conduct that has been proved and

16   determined by the judges of the facts, the jury in this

17   trial.

18             Certainly Mr. Ross had every right to go to

19   trial, to demand that the People prove his guilt beyond

20   a reasonable doubt, to be able to face his accuser and

21   have his accuser face him.  The Court takes no

22   consideration with Mr. Ross exercising his right to go

23   to trial.  But having presided at the trial, the Court

24   heard the testimony from all interested.

25             Mr. Zerner, you say this is the defendant's

Proceedings                    22

1    first time in the criminal justice system at 56 years

2    old.  The Court recognizes that, but it also recognizes

3    the lifelong impact to the victim in this case,

4    particularly the victim, but her mother as well.

5              Indeed, many sex offenders never have been

6    charged with a crime prior to being arrested and

7    charged and convicted of a sex offense.  We are all

8    shocked and surprised, how can that person do that?  I

9    couldn't believe it.  But it happens over and over, day

10   after day, year after year.

11             The victim in this case -- and she's not a

12   complainant, she's not an alleger, she's a victim --

13   she was a young girl, less than 13 years old, trying to

14   learn about herself, coming from a dysfunctional

15   family -- that was uncontradicted -- trying to learn

16   about her femininity, her womanhood, trying to be

17   loved.

18             Mr. Ross, you took that away from her.  You

19   took it away from her family.  The testimony revealed

20   you pitted the victim -- and I won't use her name,

21   because she's a child, even though it's been mentioned

22   here -- you pitted her against her mother.  I don't

23   care who that lady was or what she was, it was her

24   mother.

25             In the text messages, the victim wrote you

                                              lhw

1    were a dad to her.  She relied on you.  She needed you,

2    just like many other people needed you.

3              And I heard all that testimony.  You are a

4    caring, giving person, taking care of everybody that

5    needs to be taken care of.  But you violated the most

6    innocent person in that whole relationship, that whole

7    extended family, in a way that she can never recover.

8              They will never see you again, you will never

9    see them again, but you know what, the victim lives

10   with it and will live with it every day.  And I can

11   just imagine her laying down there in the bed at night

12   and seeing you in her mind and her heart and soul and

13   crying about what happened.

14             There was no reason for her to make any of

15   that testimony up when she sat here at trial.  You,

16   quite frankly, were the glue that held everybody

17   together by working hard and paying the bills, with all

18   the other turmoil that was going on in the family, and

19   by her testifying here at trial, the victim knew that

20   all that was going to be gone, that mushroom cloud, as

21   your attorney has described it, appropriately so.  But

22   that's what happened because of your conduct.

23             I don't know what happened.  You knew her

24   since she was born.  You lived at the address for 15

25   years.  But then as she's transforming into a woman,

                                                      lhw

1   you groomed her.  You were her favorite, you said.  She

2   was your favorite, you said in the text.  And then you

3   used her needs against her to secure her loyalty, her

4   clarinet, her phones, things that she needed as a child

5   to be a part of the school, to be a girl, to be

6   welcomed among her friends and be part of the crowd.

7           You used her, Mr. Ross, in a way that no

8   child should be used, and because of that and in

9   fulfillment of my obligation as a judge, as a judge of

10  the law, and my obligation to impose an appropriate

11  sentence, I'll do so now.

12          Your family is going to be impacted, yes, and

13  they are going to suffer too, but I can't worry too

14  much about your family.  I balance that.  I balance it

15  with what happened to the victim here all by herself,

16  alone.

17          And your family was caring and loving of her

18  as well.  They treated her like a sister or a niece,

19  but they had no idea what was going on in that truck on

20  the way home and the way to, and that's why it's a

21  shock and a surprise, and everybody says -- and I read

22  all the letters -- he's helped us financially,

23  emotionally, and been generous with his time.  I'm in

24  agreement with all that.

25          What you did was wrong and cruel and

                                                    lhw

1   violative and everlasting on the psyche, the mind, and

2   the ability of that young victim to love another person

3   as she grows into adulthood.

4                   People have an order of protection?

5                   MR. PERRI:  Yes, your Honor.

6                   THE COURT:  Could I have it?

7                   MR. PERRI:  Yes, your Honor.

8                   THE COURT:  Mr. Ross, you appear before the

9   Court for sentencing for the crimes of course of sexual

10  conduct against a child in the second degree, a

11  violation of Penal Law Section 130.80 subdivision 1B, a

12  D violent sex offense felony.  It has a maximum

13  sentence range of two to seven years determinate

14  sentence.

15                  As well as, under Count 3, endangering the

16  welfare of a child, and Count 4, the same A misdemeanor

17  crime, violations of Penal Law Section 260.10

18  subdivision 1.  Each of those has a maximum sentence of

19  one year in the local jail.

20                  You stand before the Court for sentencing for

21  those crimes for which you stand convicted after trial,

22  under Counts 2 through 4 respectively, under indictment

23  1050N of 2015, and in satisfaction thereof.

24                  Therefore, under Count 2, it is ordered and

25  adjudged that you are hereby sentenced to a determinate

Proceedings                26

1  term of imprisonment of three years as a violent felony

2  sex offender.

3           As to Counts 3 and 4, you are sentenced to

4  one year incarceration under each conviction.

5           All sentences shall run concurrently with

6  each other.  Therefore, you shall be committed to the

7  custody of the New York State Department of Corrections

8  and Community Supervision, there to be dealt with in

9  accordance with the terms of your sentence.

10          In addition, I am directing that you be

11  subjected to five years post-release supervision under

12  Count 2.

13          There is a mandatory surcharge you must pay

14  of $300, a crime victim assessment fee of $25, a DNA

15  fee of $50, a sex offender registration fee of $50, and

16  a supplemental sex offender fee of $1,000.

17          I'm issuing a full and permanent order of

18  protection in favor of the victim in this case, the

19  individual who testified at trial.  Her name is set

20  forth in the order of protection.

21          I now hand it to you for your acknowledgment

22  that you have been advised in court of the issuance and

23  contents of the order and you have personally been

24  served a copy of this order in court.

25          This is a court order.  It cannot be modified

1    or vacated unless done so by a judge of this court or a

2    court of competent jurisdiction.  Any violation of that

3    order of protection will result in additional criminal

4    charges being lodged against you.

5            This order will remain in force and effect

6    until the date set forth in the order.

7            THE CLERK:  Let the record reflect service

8    upon the People of two copies of the order of

9    protection.

10           People acknowledge receipt?

11           MR. PERRI:  People acknowledge receipt.

12           THE CLERK:  A copy is being served on counsel

13   and your client.  Acknowledge receipt of that, and your

14   client, Mr. Zerner?

15           MR. ZERNER:  Yes, acknowledge receipt.

16           THE CLERK:  Mr. Ross, listen up, sir.  You

17   have the right to appeal from this sentence and these

18   proceedings.  If you wish to appeal, you must file your

19   notice of appeal with the clerk of this court within 30

20   days.

21           If you cannot afford a lawyer or the minutes

22   of these proceedings, you may make application to the

23   Appellate Division, which will, upon being satisfied

24   you cannot afford the same, order an attorney be

25   appointed and the minutes provided without any charge

                                                lhw

1    to you.

2              Your lawyer is directed by the Court to

3    advise you in full and take the necessary steps as

4    indicated by you in this regard.

5              That concludes the proceedings.  Officers,

6    please take charge.

7              THE COURT:  Good luck, Mr. Ross.

8              MR. ZERNER:  Your Honor, I ask the bail be

9    exonerated at this time.  I think it does happen by

10   operation of law.

11             THE COURT:  Bail is exonerated.

12             MR. ZERNER:  Thank you very much.

13

14        *              *              *

15

16        The foregoing is hereby certified to be a true and

17   accurate transcript of the proceedings as transcribed

18   from the stenographic notes.

19

20

21

22

23   LISA A. WINKLER
     Senior Court Reporter

24

25

                                              lhw