UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
RAY ROSS,

                  Petitioner,

      -against-

PEOPLE OF THE STATE OF NEW YORK,

                  Respondent.
------------------------------------X

<u>MEMORANDUM AND ORDER</u>
18-CV-7219(JS)

**FILED
CLERK**

8/8/2019 12:12 pm

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

APPEARANCES
For Petitioner:    Ray Ross, <u>pro se</u>
                    #16-A-2823
                    Fishkill Correctional Facility
                    271 Matteawan Road
                    P.O. Box 1245
                    Beacon, New York 12508

For Respondent:    John B. Latella, Esq.
                    Assistant District Attorney
                    Nassau County District Attorney's Office
                    262 Old Country Road
                    Mineola, New York 11501

SEYBERT, District Judge:

        From March 2013 until June 2014, Raymond Ross ("Ross" or "Petitioner") repeatedly sexually abused M.J.,[1] a then-twelve-year-old girl.  Following a jury trial, Ross was convicted of one count of Course of Sexual Conduct Against a Child in the Second Degree in violation of New York Penal Law § 130.80(1)(b) and two counts of Endangering the Welfare of a Child in violation of New York Penal Law § 260.10(1).  Ross's subsequent appeals in New York

---

[1] For purposes of confidentiality pursuant to Civil Rights Law § 50-b, the victim is referred to herein as "M.J."  M.J. is also referred to as "Patty" at times in the trial transcript.

State Courts were unsuccessful, and Ross then filed this pro se Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Pet., D.E. 1.)  Ross raises four issues in his Petition: (1) sufficiency of the evidence; (2) ineffective assistance of counsel; (3) failure to disclose a witness's criminal record; and (4) improper preclusion of witness testimony. For the following reasons, the Petition is DENIED in its entirety.

BACKGROUND

The Court begins its inquiry with a general overview, adding greater detail in the ensuing analysis.  As is typical in habeas proceedings, the facts in this case are viewed in the light most favorable to the verdict.  See People v. Conway, 668 F.3d 79, 80 (2d Cir. 2012).

## I.   The Offense Conduct

From March 2013 to June 2014, Ray Ross sexually abused M.J., a twelve-year-old minor.  Ross lived with his girlfriend, Tara Johnson ("Tara"), in the upstairs bedroom of a single-family residence in West Hempstead, New York.  (Tr. 748-50.)[2] At the same time, M.J. lived with her mother and Tara's sister, Sarita Johnson ("Johnson"), and her other siblings on the first floor of the

---

[2] Trial Transcripts can be found as follows: Trial Transcript ("Tr.") pp. 1-353, D.E. 7-1; Tr. pp. 354-738, D.E. 7-2; Tr. pp. 739-1041, D.E. 7-3; Tr. pp. 1042-1326, D.E. 7-4; and Tr. pp. 1327-1481, D.E. 7-5.  Sentencing Transcript can be found at D.E. 7-13.

house.  (Tr. 449:20-22, 515:8-12, 745:3-747:9.)  Ross would assist Johnson, who worked odd jobs and relied on child support for income, with paying bills.  (Tr. 446:3-15, 519:20-520:4.)

In March 2013, when M.J. was in sixth grade, she began "hanging out" with Ross, who she referred to "Ray Ray."  (Tr. 755:1-756:6, 1320:3-7.)  Ross was on disability and often remained at home watching television in his room with the only functional television set in the house.  (Tr. 448:14-19, 450:12-25, 533:3-9, 888:8-20.)  At first, Ross's door remained open while in the company of M.J., but he eventually began closing it during visits.  (Tr. 451:1-5.)  While clothed in only a t-shirt and boxer shorts, Ross would repeatedly touch M.J.'s breasts and buttocks beneath her undergarments.  When M.J. asked Ross what he was doing, he responded "nothing."  (Tr. 757:18-758:25).  The course of conduct continued "once or twice a week" and intensified as Ross touched M.J.'s vagina and fondled her breasts while masturbating.  (Tr. 762:3-765:12.)  Throughout the summer of 2013, Ross had M.J. lie face down on his bed with her pants pulled down.  He would place his penis on M.J.'s buttocks and ejaculate on her backside (Tr. 776:21-779:2.)

Moreover, on his way home from weekend excursions with M.J. to visit his ex-wife Paula Ross in Brooklyn, Ross would often stop in the parking lot of a West Hempstead store and touch M.J.'s breasts, buttocks, and vagina under her clothing while they sat in

the back seat of his truck.  (Tr. 772:3-773:8.)  Ross would pull M.J.'s pants down halfway and then pull his pants down halfway exposing himself to M.J.  (Tr. 773:9-16.)  M.J. recounts Ross kissing her neck, licking her vagina, and placing her hand on his erect penis to masturbate him until he ejaculated.  (Tr. 773:17-774:23, 775:21-776:12.)  Ross also told M.J. that he wanted to "smash," a term used to denote the act of sexual intercourse.  (Tr. 774:24-775:14.)  This conduct continued from September to December 30, 2013, when M.J. turned thirteen.  (Tr. 782:3-10, 802:12-803:14.)

During this period, Ross and M.J. exchanged hundreds of calls and text messages on a cellphone Ross had purchased for her in October 2013.  (Tr. 783:1-8, 798-801.)  After she received the phone, Ross told M.J. via text that he "loves [her]" and that they would someday "live in a house" together and that he would "buy [her] a car."  (Tr. 801:4-11.)  M.J. also began entering Ross's room almost every day with the door closed when Tara Johnson was not home so that Ross could touch her breasts and vagina.  (Tr. 803-06, 821-22.)  The sexual abuse continued until June 2014, and M.J. did not tell anyone about Ross's actions because he threatened to call "social services" on Johnson and she wanted Ross to continue paying for things.  (Tr. 806:13-23.)  Furthermore, Ross continued to take M.J. to Brooklyn almost every weekend and would stop in the parking lot of a different West Hempstead store on the

way home because there were "too many people" at the old location. Ross repeatedly pulled down M.J.'s pants, touched her breasts and buttocks, licked her vagina, and masturbated. (Tr. 802:3-24, 810:17-25, 817:14-18, 819:2-23.)

Eventually in August 2014, Johnson observed Ross and M.J. together on the bed in Ross's room, confiscated M.J.'s cellphone, and contacted the Nassau County District Attorney's Office. (Tr. 472:5-474:3, 482:3-483:12, 566:18-572:11.) Johnson forbade M.J. from further contact with Ross, but Ross purchased M.J. a second phone in October 2014 and continued to visit, text, and call her on a frequent basis. (Tr. 842:15-23, 852:1-19, 912:5-7, 949:5-11, 968:15-19.) After Johnson discovered M.J.'s second phone that month and reviewed disturbing text messages exchanged between Ross and M.J., Johnson took M.J. to the District Attorney's Office and sought orders of protection against Ross in Family Court. (Tr. 484:14-22, 492:2-493:6, 501:5-502:1, 621:21-23, 622:20-24, 853:19-24, 854:1, 863:23-864:1, 898:4-14, 937-41.) Ross then moved out of the family home. (Tr. 863:8-22.)

On December 10, 2014, M.J. and Johnson spoke with Nassau County Police Detective Rhubens Toussaint in his vehicle down the street from the Johnson residence. (Tr. 503:11-22, 577:19-582:12, 629:10-630:23.) That same night, Detective Toussaint received a signed statement from both M.J. and her mother. (587:7-588:19, 653:21-654:21, 910:5-911:1-10.) He also collected the two cell

phones which contained 520 pages of records showing calls and text messages between Ross and M.J. (Tr. 632:8-12, 678:13-19, 724:17-18, 788:21-23, 867:10-19.) Ross surrendered to authorities thereafter (Tr. 656:17-658:6) and was charged with Course of Sexual Conduct Against a Child in the First and Second Degrees (New York Penal Law §§ 130.75(1)(b), 130.80(1)(b)), and two counts of Endangering the Welfare of a Child (New York Penal Law § 260.10(1)) for conduct that occurred from March 1, 2013 through December 29, 2013 and December 30, 2013 through October 17, 2014, respectively (see Aff., D.E. 7-6).

## II. The Jury Trial

### A. Summary of Proceedings

The jury trial began on February 4, 2016, in the Supreme Court of the State of New York, County of Nassau, before Justice Terrence P. Murphy. (See Tr. at 1.) Witness testimony commenced on February 9. (Tr. at 354.) The prosecution called five witnesses: Sarita Johnson (Tr. 437-625), Nassau County Police Detective Rhubens Toussaint (Tr. 626-688), Sprint Records Custodian Kelly Walker (Tr. 695-735), M.J. (Tr. 744-993), and Nassau County Child Advocacy Center Director Joshua Hanson (Tr. 994-1030). Ross called seven witnesses: Rafael Mickens (Tr. 1068-1086), George Mickens (Tr. 1092-1102), Paula Ross (Tr. 1103-1131), Jasmyn Ross (Tr. 1146-1160), Justyn Ross (Tr. 1161-1172), Tara Johnson (Tr. 1195-1259), and Ray Ross (Tr. 1263-1324). Upon

completion of closing statements, the jury was instructed on the applicable law.

On February 23, 2016, after three days of deliberation, the jury convicted Ross of Course of Sexual Conduct Against a Child in the Second Degree, and two counts of Endangering the Welfare of a Child. (Tr. 1473-75.) On June 30, 2016, Ross was sentenced to three years in prison followed by five years of post-release supervision for the Course of Sexual Conduct Against a Child conviction, as well as one year in prison on each of the Endangering the Welfare of a Child convictions. The court directed that Ross's sentences run concurrently and imposed a lifetime order of protection in favor of M.J. (Sentencing Tr. 25-26.)

B.  Pertinent Arguments

At trial, defense counsel strenuously attempted to discredit M.J.'s and Johnson's testimony. The court denied counsel's request for a copy of Johnson's NYSIS record and precluded a defense witness from testifying on a collateral matter. Specifically, while the parties were still selecting a jury, Johnson informed the prosecutor that she had been arrested for shoplifting in 2014 and had been granted an adjournment in contemplation of dismissal ("ACD") to resolve the case. (Tr. 229:10-230:12.) Upon receiving this information, defense counsel requested that the prosecutor conduct a complete search of Johnson's criminal background and turn the report over pursuant to

7

<u>Brady</u> and <u>Giglio</u>.[3]  (Tr. 229:18-236:25.)  However, the prosecutor

had already searched Johnson's criminal history and informed the

court that any records relating to the adjournment in contemplation

of dismissal would be sealed and therefore inaccessible.  (Tr.

230:8-12.)  The court inspected Johnson's NYSIS record and

determined it was blank, but still instructed the prosecutor to

"gather as much information as possible" regarding the 2014

incident.  (Tr. 233:7-10, 289:20-23, 291:13-16.)

Upon further examination, the prosecutor learned that

there was "only one record of any criminal matter," namely,

Johnson's guilty plea for disorderly conduct in relation to a petit

larceny charge in 1995.  (Tr. 291:17-292:8.)  Defense counsel again

renewed his argument, insisting that the 2014 case was "perhaps"

Johnson's "wedge to try to help herself" and that Johnson may have

had a "vested interest" in accusing Ross of sexual abuse to receive

an adjournment in contemplation of dismissal (Tr. 359:1-10, 512:

21-513:13.)  Thereafter, the court ruled that "there [was] no

criminal conviction, so there [was] no obligation on the assistant

district attorney to provide anything else to defense counsel."

---

[3] <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215
(1963); <u>Giglio v. United States</u>, 405 U.S. 150, 92 S. Ct. 763, 31
L. Ed. 2d 104 (1972).

(Tr. 363:14-18.)  Johnson's record was then marked as a court exhibit.  (Tr. 353:11-12.)

Also relevant for purposes of this Petition is that midway through the defense case, defense counsel informed the court that, during a weekend recess, Johnson had contacted the Nassau County Police Department to make a trespass allegation against her neighbor, Denise Sawyer.  (Tr. 740:5-742:3.)  Although defense counsel did not initially plan to call Sawyer as a witness, counsel told the court that "maybe" Sawyer had witnessed interactions between Ross and M.J. and that she could perhaps elucidate Johnson's "bias" and "reputation in the community."  (Tr. 1141:17-22, 1179:12-16, 1183:10-17.)  In addition, defense counsel argued that interactions between Johnson and Sawyer could affect Johnson's credibility.  (Tr. 1034:12-1035:12, 1040:24-1041:9.)  However, relying on People v. Seabrook, 76 A.D.3d 606 (2d Dept. 2010), and other cases[4], the prosecutor asserted that the matter was "collateral" and irrelevant to the present case.  (Tr. 742:20-22, 1054:2-9, 1179:18-22.)  The trial court agreed, finding Sawyer could not offer "any meaningful testimony" and precluded her testimony at trial.  (Tr. 1185:14-19, 1191:19-22.)

---

[4] People v. Ruiz, 18 A.D.3d 220 (1st Dept. 2005); People v. Lyons, 2010 WL 4227250 (Sup. Ct., Queens Cty., Oct. 10, 2010).

III. Post-Trial Proceedings

Ross, with appellate counsel, appealed his conviction to the Appellate Division, Second Department on the following grounds: (1) defense counsel was ineffective because counsel failed to argue that the evidence was insufficient based on lack of corroboration; (2) Ross was denied a fair trial because (a) the defense should have been given Sarita Johnson's NYSIS criminal record for use during cross-examination, and (b) the defense should have been allowed to call a witness during its rebuttal to impeach the credibility of Sarita Johnson; and (3) M.J.'s testimony was not corroborated to prove Ross's guilt beyond a reasonable doubt. (See Ross A.D. Br., Points I-III, D.E. 7-7, at 7-17.)

The Second Department affirmed his conviction. People v. Ross, 159 A.D.3d 925, 70 N.Y.S.3d 62 (2d Dept. 2018). First, the court held that the legal sufficiency claim, predicated on a lack of corroboration, was "unpreserved for appellate review." Id. at 926. In any event, the Court found that it was "without merit" because corroboration of the complainant's testimony is not required under Penal Law §§ 130.16 and 260.11 when lack of consent does not result from incapacity to consent due to "'mental defect or incapacity.'" Id. (quoting People v. Pumarejo, 222 A.D.2d 616, 635, N.Y.S.2d 290 (2d Dep't 1995)). Second, the Appellate Division found that the People satisfied their discovery obligations under CPL 240.45(1)(b) and (c) by disclosing to the defense "any known

judgments of conviction or pending criminal actions relating to the prosecution's witnesses," including Sarita Johnson.  Id. Third, the court determined that Ross was not deprived of effective assistance of counsel because "the record as a whole demonstrates that counsel provided [Ross] with meaningful representation."  Id. Finally, the court concluded that Ross's remaining contentions were wholly without merit.  Id.

Following the Second Department's decision and order, Ross sought leave to appeal to the New York Court of Appeals on the same grounds listed in his appellate brief.  (Apr. 2018 Leave Letter, D.E. 7-10.)  The Court of Appeals denied leave to appeal on June 28, 2018.  People v. Ross, 31 N.Y.3d 1121, 106 N.E.3d 764 (2018).  Ross then filed this Petition on December 17, 2018, claiming he is entitled to relief for the reasons raised on direct appeal.

DISCUSSION

The Court will first address the applicable legal standard before turning to the merits of the Petition.

I.   The Legal Standard

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas corpus to state prisoners."  Williams v. Taylor, 529 U.S. 362, 399, 120 S. Ct. 1495, 1516, 146 L. Ed. 2d 389 (2000).  A state

prisoner seeking habeas corpus relief under Section 2254 must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254, as amended by AEDPA, provides, in part, that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was not adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1).

AEDPA established a deferential standard of relief, seeking to "avoid [ ] unnecessarily 'disturbing the State's significant interest in repose for concluded litigation, denying society the right to punish some admitted offenders, and intruding on state sovereignty to a degree matched by few exercises of federal judicial authority.'"  Virginia v. LeBlanc, 137 S. Ct. 1726, 1729, 198 L. Ed. 2d 186 (2017) (quoting Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011)) (brackets omitted).  Accordingly, a habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court.  Herrara v. Collins, 506 U.S. 390, 401, 113 S. Ct. 853, 861, 122 L. Ed. 2d 203 (1993).  Ultimately, "the petitioner

bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997); see also Hawkins v. Costello, 460 F.3d 238, 246 (2d Cir. 2006).

Therefore, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to] and 'unreasonable.'" Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000). A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on question of law or if the state court decides a case different than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S. Ct. at 1523.

On the other hand, a decision involves "an unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the

13

Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id</u>. at 413, 120 S. Ct. at 1523. This standard does not require that all reasonable jurists agree that the state court was wrong; rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" <u>Jones</u>, 229 F.3d at 119 (quoting <u>Francis S. v. Stone</u>, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'" <u>Jones v. Murphy</u>, 694 F.3d 225, 234 (2d Cir. 2012) (quoting <u>Hardy v. Cross</u>, 565 U.S. 65, 66, 132 S. Ct. 490, 491, 181 L. Ed. 2d 468 (2011)). Section 2254(d), as amended by AEDPA, "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." <u>Harrington</u>, 562 U.S. at 102, 131 S. Ct. at 786.

Assuming that a petitioner's claims are cognizable on habeas review, a petitioner must first exhaust state court remedies before coming to federal court. Exhaustion requires that a petitioner fairly present the claim in state court, allowing the state court the "'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" See <u>Jackson v. Edwards</u>, 404 F.3d 612, 619 (2d Cir. 2005) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971)). "A petitioner has 'fairly presented' his claim only if

he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" <u>Jones v. Keane</u>, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting <u>Dorsey v. Kelly</u>, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." <u>Daye v. Attorney Gen. of N.Y.</u>, 696 F.2d 186, 191-92 (2d Cir. 1982) (collecting cases).

In addition, a federal court will not review a habeas petition if a petitioner's claims were decided at the state level on "independent and adequate" state procedural grounds. <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32, 111 S. Ct. 2546, 2555, 115 L. Ed. 2d 640 (1991). This procedural bar applies even if the state court addressed the merits in the alternative but decided the claim on independent procedural grounds. <u>Velasquez v. Leonardo</u>, 898 F.2d 7, 9 (2d Cir. 1990). To obtain review of procedurally barred claims, a state prisoner must show either (1) "cause for the default and actual prejudice as a result" or (2) actual innocence such that "failure to consider the claims will result in a

fundamental miscarriage of justice." Coleman, 501 U.S. at 750,
111 S. Ct. at 2565.

II.  The Petition

     In the Petition, Ross renews the arguments made on direct
appeal, specifically that: (1) his convictions were not supported
by legally sufficient evidence; (2) he was denied effective
assistance of counsel in violation of the Sixth Amendment of the
United States Constitution; (3) he was deprived of a fair trial
because the court refused to order the prosecutor to turn over a
witness's criminal record; and (4) the court erroneously precluded
a witness from testifying on his behalf.  The Court will address
each of his claims in turn.

     As a threshold matter, because Ross's submissions were
filed pro se, the Court will liberally construe them and interpret
them "'to raise the strongest arguments that they suggest.'"
Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014)
(quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).
However, the leeway afforded does not excuse Ross "'from
compl[ying] with relevant rules of procedural and substantive
law,'" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting
Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)), as he "bears
the burden of proving by a preponderance of the evidence that his

constitutional rights have been violated." Jones v. Vacco, 126
F.3d 408, 415 (2d Cir. 1997).

A. Legal Sufficiency of the Evidence

First, Ross challenges the sufficiency of the evidence
to support his convictions for Course of Sexual Conduct and
Endangering the Welfare of a Child. (Pet. at 8.) His primary
argument is that M.J.'s testimony was not corroborated as to
"anything improper" occurring in Ross's bedroom or truck. (Pet.
Ex., D.E. 1-1, at ECF p.4.) Ross also contends that, although his
text message exchanges with M.J. reveal a "close relationship,"
these messages do not "indicate any sexual activity" and are
consistent with "the care and concern of an adoptive or surrogate
uncle for a niece." (Pet. Ex. at ECF p.4.) The Court finds Ross's
sufficiency claim is procedurally barred from habeas corpus review
and, in any event, without merit.

At trial, the defense did not argue that the proof was
insufficient because it was uncorroborated. When Ross raised this
claim for the first time on direct appeal to the Second Department,
that court ruled that it was "unpreserved for appellate review"
and, in any event, "without merit." Ross, 159 A.D.3d at 926.
Thus, the state courts in this case have "expressly relied on a
procedural default as an independent and adequate state ground" in
denying Petitioner's unpreserved claim. Velasquez, 898 F.2d at 9.

The Second Circuit has made clear that "federal courts generally will not consider a federal issue in a case if the decision of the state court rests on a state law ground that is independent of the federal question and is adequate to support the judgment."  Garvey v. Duncan, 485 F.3d 709, 713 (2d Cir. 2007) (internal quotation marks and citation omitted).  The failure to preserve an issue for appellate review is such an independent and adequate state law ground.  Id. at 720 (finding that "the procedural bar of [C.P.L.] § 470.05(2) constitutes an independent and adequate state ground for the Appellate Division's holding").  Accordingly, Ross's claim that his conviction was unsupported by legally sufficient evidence is procedurally barred from this Court's review.  See Rattray v. Brown, 261 F. Supp. 2d 149, 156 (E.D.N.Y. 2003) ("It is well settled that where a state court decision states that a claim is procedurally barred, and then rules 'in any event' on the merits, the claim is procedurally barred") (citing Harris v. Reed, 489 U.S. 255, 264, 109 S. Ct. 1038, 1044, 103 L. Ed. 2d 308 (1989); Velasquez, 898 F.2d at 9).

Exploring all potential legal arguments because of Ross's pro se status, Ross could nonetheless overcome the procedural bar by (1) establishing cause for his default and resulting prejudice, or (2) demonstrating that this Court's failure to review his claim will result in a fundamental miscarriage of justice because, for example, he is actually

innocent of the crimes for which he was convicted.  See Coleman v. Thompson, 501 U.S. 722, 749-50, 111 S. Ct. 2546, 2564-65, 115 L. Ed. 2d 640 (1991); Murray v. Carrier, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649, 91 L. Ed. 2d 397 (1986).  However, Ross does not make any showing with respect to these standards.  He does not allege any cause for procedural default, let alone demonstrate that he was prejudiced as a result.  See Velasquez, 898 F.2d at 9. Moreover, Ross does not make a showing that he is actually innocent of the charges for which he was convicted.  Thus, the Court finds this claim procedurally barred from habeas review.

Assuming arguendo that there was no procedural bar, Ross still would not be entitled to habeas relief based on the merits of his sufficiency claim.  Ross fails to establish that the state court's conclusion--that the evidence was legally sufficient to support his convictions--resulted in a decision that is contrary to, or involves an unreasonable application of, United States Supreme Court precedent.  See 28 U.S.C. §2254(d)(1).  An "unreasonable application of" United States Supreme Court precedent "must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice."  White v. Woodall, 572 U.S. 415, 419, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014) (quoting Lockyer v. Andrale, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1174, 155 L. Ed. 2d 144 (2003)).  Instead, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show

that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 419-20 (internal quotation marks and citation omitted).

The settled standard for reviewing legal sufficiency claims is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979) (emphasis in original). Thus, "a petitioner 'bears a very heavy burden' when challenging the legal sufficiency of the evidence in an application for a writ of habeas corpus." Ayala v. Ercole, No. 06-CV-1747, 2007 WL 1135560, at *6 (E.D.N.Y. Apr. 17, 2007) (quoting Eingaugler v. S. Ct. of the State of N.Y., 109 F.3d 836, 840 (2d Cir. 1997)).

In this case, the People were required to prove that Ross, "over a period of time not less than three months in duration . . . being eighteen years old or more, engage[d] in two or more acts of sexual conduct with a child less than thirteen years old." N.Y. PENAL LAW § 130.80(1)(b). Additionally, the People were required to prove lack of consent because M.J. was incapable of consent, either by being inter alia, less than seventeen years of age, mentally disabled, or mentally incapacitated. N.Y. PENAL LAW

§§ 130.05(1); (2)(b); (3)(a)-(c). Regarding the child endangerment charges, the People were required to prove that Ross "knowingly act[ed] in a manner likely to be injurious to the physical, mental, or moral welfare of a child less than seventeen years old." N.Y. PENAL LAW § 260.10(1).

An additional burden is imposed on the People to corroborate a victim's testimony only when the lack of consent arises "solely from incapacity to consent because of the victim's mental defect, or mental incapacity."[5] N.Y. PENAL LAW § 130.16. Noticeably absent from the statutory language is an age requirement. Instead, courts in New York State follow "the long-standing rule that the necessity of corroboration of the testimony of a child under the age of 12 rests solely on whether, as determined by the judge before whom the testimony is to be given, the child understands the nature of an oath." People v. Fuller, 50 N.Y.2d 628, 636, 409 N.E.2d 834 (1980).

Here, the prosecution was not required to corroborate M.J.'s testimony. The evidence shows that M.J., a successful student, did not suffer from any mental disease or defect. In his own testimony, Ross praised M.J.'s success in school as an honors

---

[5] If the essence of the endangering charge is conduct that would constitute a crime under Article 130 of the New York Penal Law, then the People must also satisfy the corroboration requirement when the victim lacks capacity to consent because of "mental defect or incapacity." N.Y. PENAL LAW § 260.11.

student (Tr. 1296:4-1297:18, 1307:18-21.) See Pumarejo, 222 A.D.2d at 616 ("corroboration is required only in sexual offense cases in which the victim is incapable of consent because of mental defect or incapacity, a situation which was not shown to exist here").

Furthermore, because it is undisputed that M.J. was fifteen years of age when she testified at trial, she was permitted to give sworn testimony without the court inquiring into whether she was fit to do so. Cf. People v. Mendoza, 49 A.D.3d 559, 560, 853 N.Y.S.2d 364 (2d Dep't 2008) (holding that "the [trial court] providently exercised its discretion in determining that the five-year-old complainant was competent to give sworn testimony); People v. McLoud, 291 A.D.2d 867, 867, 737 N.Y.S.2d 216 (4th Dep't 2002) (finding that where the defendant was convicted of course of sexual conduct in the first degree, corroboration was unnecessary because "the 11-year-old victim gave sworn testimony and she was not incapable of consent . . . because of mental defect or incapacity" (internal quotation marks and citations omitted)). Thus, the evidence presented at trial was legally sufficient to convict Ross and did not require corroboration.

Even if, arguendo, Ross were correct that corroboration was necessary, this Court would reach the same result because the People indeed provided sufficient evidence to corroborate M.J.'s testimony. It is well-settled law that the corroboration

requirement of sections 130.16 and 260.11 of the New York Penal Law "may be satisfied with circumstantial evidence and need not point to the particular form" of the offending conduct. <u>People v. De Berry</u>, 76 A.D.2d 933, 933, 429 N.Y.S.2d 268 (2d Dep't 1980). Despite Ross's bald assertion that "there was no corroboration of the alleged offense," there was ample circumstantial evidence corroborating defendant's sexual conduct. (Pet. at 8.) For example, M.J. testified that Ross would sexually abuse her while he and M.J. were alone in his bedroom watching television. Consistent with M.J.'s testimony, Johnson walked into Ross's room while the door was closed in August 2014 and personally observed M.J. sitting next to Ross on his bed while he was lying down. (Tr. 472:5-473:9, 824:9-826:3.)

M.J. also described in explicit detail how Ross would sexually abuse her in the back seat of his white truck when she and Ross stopped in parking lots upon returning to West Hempstead from weekend trips to Brooklyn. (Tr. 772:3-776:12.) Multiple defense witnesses testified, along with Johnson, as to these weekend excursions and details about Ross's vehicle. (Tr. 451:18-455:23, 1150:18-1155:20, 1157:8-17, 1163:16-1164:12, 1218:21-1219:24.) Ross himself even admitted to being alone with M.J. many times in his truck and in his room. (Tr. 1306:11-1307:7.) This information arguably is enough to corroborate the charges of which Ross was convicted. See <u>People v. Dickson</u>, 112 A.D.2d 312,

312, 491 N.Y.S.2d 759 (2d Dep't 1985) (finding corroboration when the "testimony of the 12-year-old complainant, the defendant's niece, was specific concerning the details of the [sexual] incident, and closely paralleled the defendant's own account of his activities with the complainant on the day in question insofar as they relate to the specifics of time and place").

Additionally, Ross attempts to argue that the hundreds of text messages exchanged with M.J. were innocuous.  The Court does not agree.  In a series of messages and calls totaling 520 pages of evidence, some of which were sent between the hours of 1:00 a.m. and 4:00 a.m., Ross told M.J., inter alia, that he "loved her," (Tr. 1316:23-24); that M.J was "in danger of losing [him]," (Tr. 1317:7-9); that he would "never find another [M.J.], you're my heart," (Tr. 1317:13-16); and that "part of him died" when Johnson forbid M.J. from seeing Ross again (Tr. 1317:46).  Ross also was upset because M.J. would not call to say, "hi Ray Ray," (Tr. 1320:4-7); admonished M.J. for "forget[ting] who loves you and take[s] care of you," (Tr. 1320:3-7); and threatening that M.J. would "lose [him]," (Tr. 1320:5-7).  Although Ross admits that these messages were sent on phones that he paid for and which he wanted to keep secret from Johnson, he downplays the significance of this circumstantial evidence given the ongoing sexual abuse inflicted upon M.J.  See People v. Scaringe, 137 A.D.3d 1409, 1418, 27 N.Y.S.3d 712 (3d Dep't 2016) (describing how

the victim's testimony was corroborated "most significantly, by the multiple text messages introduced into evidence in which defendant, among many other things, described the day on which the victim claimed that they had sexual intercourse as 'a dream come true'").

For the foregoing reasons, the Appellate Division's decision that the evidence was legally sufficient to establish Ross's guilt was not an unreasonable application of United States Supreme Court precedent.  A rational trier of fact could have concluded that Ross was guilty of the Course of Sexual Conduct and Endangering the Welfare of a Child charges for which he was convicted.  Thus, Ross's legal sufficiency of the evidence claim is rejected.

B.  Ineffective Assistance of Counsel

Second, Ross asserts that he was denied effective assistance of counsel under the Sixth Amendment.  (Pet. at 5.) Specifically, Ross argues that he was "denied the benefit of counsel who understood the issues and raised them" because defense counsel "did not make any mention of corroboration of the acts of which [M.J.] complained."  (Pet. Ex. at ECF p.2.)  Because Ross's first claim is wholly without merit and is the sole premise on which his ineffective assistance claim is based, his conclusory assertion that his attorney was ineffective suffers the same fatal flaw.

The Sixth Amendment of the Constitution guarantees the right to effective assistance of counsel in criminal proceedings. See U.S. CONST., Amend. VI. In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court developed the modern two-pronged test for evaluating ineffective assistance claims. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Second, "[t]he defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Scrutiny of counsel's performance under Strickland is highly deferential; a reviewing court "must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance. Id. at 689.

Moreover, when an ineffective assistance of counsel claim arises from a federal habeas corpus petition, the standard of review is "doubly" deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. . . . For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." . . . A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

> . . . Even under <u>de novo</u> review, the standard
> for judging counsel's representation is a most
> deferential one.
>
> Establishing that a state court's application
> of <u>Strickland</u> was unreasonable under
> § 2254(d) is all the more difficult. The
> standards created by <u>Strickland</u> and §
> 2254(d) are both "highly deferential," . . .
> and when the two apply in tandem, review is
> "doubly" so . . . . Federal habeas courts must
> guard against the danger of equating
> unreasonableness under <u>Strickland</u> with
> unreasonableness under § 2254(d).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101-05, 131 S. Ct. 770, 785-88, 178 L. Ed. 2d 624 (2011) (internal citations omitted) (emphasis in original); <u>accord</u> <u>Premo v. Moore</u>, 562 U.S. 115, 121-22, 131 S. Ct. 733, 739, 178 L. Ed. 2d 649 (2011).

Here, Ross's claim fails under this demanding "doubly deferential" standard. On Ross's direct appeal, the Appellate Division held that "the record as a whole demonstrates that counsel provided the defendant with meaningful representation." <u>Ross</u>, 159 A.D.3d at 926. Upon review of the extensive trial transcript and relevant precedent, this Court agrees. Petitioner not only has failed to establish that trial counsel was ineffective, but he has also failed to establish that the state appellate court's decision regarding counsel's performance was contrary to, or involved an unreasonable application of, <u>Strickland</u> and its progeny.

First, as discussed <u>supra</u>, Ross's ineffective assistance of counsel claim depends on there being something for trial counsel

to have argued with respect to corroboration of the evidence. Yet, as this Court already noted, corroboration was not a requirement for the jury to convict Ross under the relevant provisions of the New York Penal Law. Indeed, as a federal matter, there was ample corroborating evidence. Trial counsel cannot--and should not--be faulted for failing to make frivolous arguments that are legally and factually incorrect. See Bierenbaum v. Graham, 607 F.3d 36, 52 (2d Cir. 2010) (finding that the petitioner was not deprived of effective assistance of counsel when defense counsel failed to make a motion that "would not have been granted" in any event); Graziano v. United States, No. 12-CV-0738, 2013 WL 298116, at *12 (E.D.N.Y. Jan. 25, 2013) (counsel's failure to make "a meritless motion was certainly not ineffective"). (See also Tr. Counsel Aff., D.E. 7-6.)

Furthermore, Ross cannot show that the Appellate Division unreasonably applied the well-established standard set forth in Strickland. Ross's ineffective assistance claim was before the Appellate Division when the court determined that trial counsel provided Ross with "meaningful representation." Ross, 159 A.D.3d at 926. The Appellate Division applied the appropriate standard of review, citing, inter alia, People v. Baldi, 54 N.Y.2d 137, 429 N.E.2d 400, 444 N.Y.S.2d 893 (1981). Id. As the Second Circuit has held, the "meaningful representation" standard from

Baldi "is not contrary to Strickland." Rosario v. Ercole, 601 F.3d 118, 126 (2d Cir. 2010).

Likewise, the state court's findings do not reflect an unreasonable application of federal law under any standard of review. Trial counsel served Ross well under the circumstances given the serious allegations and corroborated circumstantial evidence against him. (See Resp't Br., D.E. 7, at 35; see also Tr. Counsel Aff.) Because of defense counsel's vigorous presentation and cross-examination of key witnesses, the jury acquitted Ross of the most serious charge of Course of Sexual Conduct in the First Degree--a Class B Violent Felony punishable by a minimum of five years imprisonment. N.Y. PENAL LAW § 70.02(3)(a). For these reasons, Ross has failed to demonstrate that defense counsel's performance "fell below an objective standard of reasonableness." As such, this Court need not address whether Ross was prejudiced under the second prong of Strickland and rejects Ross's ineffective assistance of counsel claim. See Palacios v. Burge, 589 F.3d 556, 566 (2d Cir. 2009).

C.  Disclosure of a Witness's Criminal Record

Third, and once again repeating a claim denied on direct appeal to the Appellate Division, Ross contends that he was deprived of a fair trial when the court refused to order the prosecutor to turn over a witness's criminal record. (Pet. at 6.) Ross requested certain "NYSIS information" concerning Johnson, the

mother of the complaining witness, arguing that Johnson used the case as leverage to obtain an adjournment in contemplation of dismissal (ACD) on a pending 2014 criminal matter against her. (Pet. Ex. at ECF p.2.)  At the outset, this Court could deny Ross's request for relief on this ground because it is unexhausted and therefore not cognizable.  However, because Ross is proceeding pro se, the Court will also address the merits of the argument.

First, Ross has failed to exhaust this claim in the New York State courts, which is required before this Court may consider it.  See 28 U.S.C. § 2254(b)(1)(A).  To satisfy the exhaustion requirement, a petitioner must have "fairly presented" his federal claim to the state court.  See Picard v. Conner, 404 U.S. 270, 275, 92 S. Ct. 509, 512, 30 L. Ed. 2d 438 (1971). Fair presentation means raising the claim on direct appeal to the Appellate Division and then seeking review from the Court of Appeals.  See Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991) (detailing how claims are not fairly presented to New York courts where the petitioner fails to include them in a letter seeking leave to appeal to the New York Court of Appeals from the Appellate Division's affirmance of judgment).

However, a petitioner cannot simply go "through the state courts." Picard, 404 U.S. at 276, 92 S. Ct. at 512.  Instead, the state court must have the opportunity to consider "the substance of [the] federal habeas corpus claim." Id. at 278, 92

S. Ct. at 512. Thus, although the petitioner need not cite the "book and verse on the federal constitution" (id.), a generalized claim of having been denied a fair trial is insufficient to notify the state courts of the constitutional nature of the claim. See Duncan v. Henry, 513 U.S. 364, 366, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."); Whitehead v. Haggett, No. 12-CV-4946, 2017 WL 491651, at *16 (E.D.N.Y Feb. 6, 2017) (same).

The Second Circuit has identified four ways in which a petitioner may fairly present his federal claims to state court: (1) "reliance on pertinent federal cases employing constitutional analysis"; (2) "reliance on state cases employing constitutional analysis in like fact situations"; (3) "assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution"; and (4) "allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Jackson v. Edwards, 404 F.3d 612, 618 (2d Cir. 2005) (quoting Daye v. Atty. Gen. of N. Y., 696 F.2d 186, 191 (2d Cir. 1982)).

Applying this standard, this Court finds that Ross has not fairly presented his claim regarding failure to disclose a witness's criminal record. Ross relies solely on section 240.45

of the New York Criminal Procedure Law and does not cite a single right found within the United States Constitution of which he was deprived.  Accordingly, Ross has not fairly presented his claim in this circumstance.  See Carvajal v. Artus, 633 F.3d 95, 107 (2d Cir. 2011) (petitioner's claim unexhausted when, on appeal, petitioner solely relied on "state court decisions interpreting state statutory law").

Ross may not return to the state courts for further review of these claims, as the New York State Court of Appeals has already denied him leave to appeal the Second Department's decision affirming the judgment of conviction.  See C.P.L. §§ 460.10(5)(a), 460.20.  When state procedural rules no longer permit a habeas petitioner to present his claim to the highest state court empowered to review it, the unexhausted claim is "deemed" exhausted but procedurally defaulted.  St. Helen v Senkowski, 374 F.3d 181, 183 (2d Cir. 2004).  In such instances, federal habeas corpus review of the claims is generally not permitted.  See O'Sullivan v. Boerckel, 526 U.S. 838, 848, 119 S. Ct. 1728, 1734, 144 L. Ed. 2d 1 (1999) (holding that a claim which can be presented to a state's highest court, but which is not presented, results in procedural default); Gray v. Netherland, 518 U.S. 152, 162, 116 S. Ct. 2074, 2080, 135 L. Ed. 2d 457 (1996) ("the procedural bar that gives rise to exhaustion . . . thus prevents federal habeas corpus review of the defaulted claim").  Indeed, a habeas court may reach

the merits of the claim "'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent.'" St. Helen, 374 F.3d at 184 (quoting Bousley v. United States, 523 U.S. 614, 622, 118 S. Ct. 1604, 1611, 140 L. Ed. 2d 828 (1998)).

The "prejudice" requirement of the cause and prejudice showings necessary to overcome Ross's procedural default requires more than a showing of a possibility of prejudice; instead, Ross must demonstrate that the alleged errors worked to his actual and substantial disadvantage. See United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1596, 71 L. Ed. 2d 816 (1982) (finding that a habeas petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (second & third emphasis added). Thus, the prejudice requirement is not met when the claims do not provide a basis for habeas corpus relief, such as when they are meritless or not cognizable on federal habeas corpus review. See Cappiello v. Hoke, 698 F. Supp. 1042, 1052 (E.D.N.Y. 1988) ("Naturally, petitioner's procedural default of his claim . . . is prejudicial only if such claim is meritorious."), aff'd, 852 F.2d 59 (2d Cir. 1988).

Here, Ross has not demonstrated any cause for his failure to argue that his claims were of a constitutional dimension, nor has he at any time claimed actual innocence. Likewise, because Ross is not entitled to relief on the merits, he has accordingly suffered no prejudice.

This Court agrees with Respondent's observation that Ross cites no federal constitutional violation, which is "telling" in this case. Although Ross cites to a statute codified in state law, it is fundamental that "'habeas corpus relief does not lie for errors of state law.'" Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990)). The requirement that a defendant be provided with the pre-trial statements of any witness who is called to testify for the People (see C.P.L. § 240.45(1)(a)) as well as any known criminal convictions and the existence of any criminal actions pending against trial witnesses (see C.P.L. § 240.45(1)(b), (c); People v. Machado, 90 N.Y.2d 187, 191, 681 N.E.2d 409, 659 N.Y.S. 2d 242 (1997), is strictly a matter of New York State law. Neither C.P.L. § 240.45 nor its federal counterparts (Jencks v. United States, 353 U.S. 657 (1957); 18 U.S.C. § 3500) is grounded in the United States Constitution. See Hirsch v. Plescia, No. 03-CV-1617, 2005 WL 2038587 at *7 (E.D.N.Y. Aug. 23, 2005). Therefore, Ross's claim regarding the failure to fulfill the mandates of

C.P.L. § 240.45 does not assert a federal constitutional claim that is reviewable in the habeas corpus proceeding before this Court.

In any case, Ross's claim is meritless. The Appellate Division determined that "the record demonstrates that the People fulfilled their discovery obligations under C.P.L. 240.45(1)(b) and (c) by disclosing to the defense any known judgments of conviction or pending criminal actions related to the prosecution's witnesses." Ross, 159 A.D.3d at 926. Nor is there prejudice from any purported error because the jury could have rejected Johnson's testimony and still convicted Petitioner based on overwhelming evidence. Review of the trial transcript reveals that M.J.'s testimony of her sexual relationship with Ross in his bedroom and truck was specific, consistent, and corroborated by the voluminous cell phone records and statements of other witnesses including Detective Rhubens Toussaint and Child Advocacy Director Joshua Hanson. Johnson's testimony was therefore not dispositive of the jury's guilty verdict, and the Court finds Ross's third argument unpersuasive. Even if the jury questioned Johnson's credibility because of her NYSIS criminal history, Ross could still have been convicted for his crimes against M.J. without Johnson ever taking the stand.

D. <u>Preclusion of Witness Testimony</u>

Finally, Ross argues that the trial court erred in precluding Denise Sawyer from testifying as a witness for the defense because Sawyer "could have discussed Sarita Johnson's credibility and her reputation in the community," which in turn could cause the jury to discredit her testimony and render a verdict in his favor. (Pet. Ex. at ECF p.3.) However, the trial court's decision to preclude Sawyer's testimony was a correct application of settled law and thus does not provide a basis for relief.

While "[t]he rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process," (Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 1045, 35 L. Ed. 2d 297 (1973); see also Washington v. Schriver, 255 F.3d 45, 56 (2d Cir. 2001)), the right to present a defense is not limitless. In a criminal proceeding, the accused "must comply with established rules of procedure and evidence designed to assure both fairness and reliability." Chambers, 410 U.S. at 302. Moreover, where, as here, a habeas petitioner claims that a state court made erroneous rulings that deprived him of the right to present a defense, the reviewing court is required to distinguish between mere errors of state law and those with federal constitutional implications (see Jones v. Stinson, 229 F.3d 112, 120 (2d Cir. 1988)), namely, those which deprive a petitioner of fundamental fairness. See Rosario

v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988).  In other words, the excluded evidence must be material to the petitioner's defense, in that its inclusion would have created reasonable doubt about his guilt.  See id. at 925.  Following these standards, Ross's claim does not warrant relief.

The trial court properly applied state law in deciding to preclude Sawyer's testimony.  After a weekend recess in testimony during the defense case, defense counsel informed the court of a recent incident involving Johnson and her neighbor, Denise Sawyer.  (Tr. 114:6-1143:4.)  According to counsel, Johnson contacted the Nassau County Police Department and threatened Sawyer after Sawyer allegedly trespassed on her property.  (Tr. 1143:14-1143:1.)  Although defense counsel did not previously plan to call Sawyer as a witness, he announced that Sawyer's testimony would be useful "given what we have now."  (Tr. 741:3-14.)  When the court inquired as to whether defense counsel's only purpose for calling Sawyer was to "impugn" Johnson, defense counsel answered that "[m]aybe" Sawyer had witnessed interactions between Ross and M.J., or alternatively that Sawyer could elucidate Johnson's potential "bias" or "perhaps even her reputation in the community." (Tr. 1141:16-1142:7, 1183:10-17.)

Responding to these contentions, the prosecutor argued that the sole purpose of calling Sawyer was to allow her to testify about the trespass incident, a matter wholly "collateral" and

37

having "nothing to do with the present case." (Tr. 742:20-22, 1143:6-23, 1179:23-1180:16.) The prosecutor further emphasized defense counsel's admission that he was not planning to call Sawyer prior to the court's weekend recess. **(**Tr. 742, 1143, 1179:18-1180:24). The trial court agreed, noting that defense counsel sought to call Sawyer after a "separate and distinct and post action incident," and furthermore ruling that Sawyer could not offer any meaningful testimony" because her testimony was collateral. (Tr. 1181:21-23, 1185:14-19.)

In New York State, it is well-settled that extrinsic evidence of "immoral, vicious, or criminal acts" may not be used to impeach a witness during trial (People v. Lyde, 160 A.D.2d 817, 817-18, 554 N.Y.S.2d 74 (2d Dept. 1990)) because such evidence tends to "divert the jury's attention away from the main issues involved in the trial," People v. Pavao, 59 N.Y.2d 282, 289-90, 451 N.E.2d 216 (1983).

Here, defense counsel's offer of proof reflects that the only purpose for Sawyer's testimony was to tarnish Johnson's credibility. Defense counsel wished to elicit details of an unrelated and alleged "vicious" act that had taken place during the court's weekend recess. The proffered explanation for Sawyer's testimony, to ascertain Johnson's "reputation in the community," is unpersuasive because defense counsel already finished cross-examining Johnson. Therefore, the trial court properly precluded

Sawyer's testimony because such testimony was wholly immaterial to any issue at Ross's trial. See People v. James, 177 A.D.2d 595, 596, 576 N.Y.S.2d 47 (2d Dept. 1991) ("The trial court properly . . . refus[ed] to admit the proffered testimony of [a witness]. This testimony was not probative of any issues in the case"); People v. Fitzpatrick, 171 A.D.2d 972, 975, 567 N.Y.S.2d 915 (3d Dept. 1991) (the trial court properly excluded extrinsic evidence offered by the defense in response to the testimony of the People's rebuttal witness because such extrinsic evidence was "irrelevant and immaterial to any issue involving defendant's guilt or innocence" and its only purpose would have been to impeach a prosecution witness's credibility; accord FED. R. OF EVID. 608(b) ("extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness"); United States v. La Chance, 788 F.2d 856, 877 (2d Cir. 1986) (the trial court properly struck testimony from a witness related to another witness's credibility because the testimony was "collateral" and thus not proven through "extrinsic evidence").

Finally, even if this Court found that the preclusion of Sawyer's testimony was erroneous, such error would be considered "harmless" to Ross's substantial rights under 28 U.S.C § 2111 and Brecht v. Abrahamson, 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993). In Brecht, the Supreme Court held that, in determining

whether habeas relief must be granted because of an error on the part of the trial court, the standard is whether the error had a "substantial and injurious effect or influence in determining the jury's verdict," rather than whether the error was harmless beyond reasonable doubt.  Id. at 637, 113 S. Ct. at 1722 (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253, 90 L. Ed. 1557 (1946)).  Under this more stringent standard, although habeas petitioners may "obtain plenary review of their constitutional claims," they are not "entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice."  Id. at 637 (citing United States v. Lane, 474 U.S. 438, 449, 106 S. Ct. 725, 732 88 L. Ed. 2d 814 (1986)).  Therefore, "[h]abeas relief is not appropriate when there is merely a 'reasonable possibility' that trial error contributed to the verdict."  Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994) (citing Brecht, 507 U.S. at 637, 113 S. Ct. at 1721).

Here, the overwhelming evidence of Petitioner's guilt, discussed supra, renders the trial court's decision to preclude Sawyer's testimony harmless error under Brecht.  For example, in addition to M.J.'s direct testimony about Ross touching and licking her breasts, buttocks, and vagina while masturbating in his bedroom and the back seat of his truck, the prosecution presented hundreds of pages of cell phone records detailing late night calls and text conversations between Ross and M.J. in which he told her, among

other things, that he "loved her," and that "part of him died" when he could no longer see M.J. As a result, the Court does not consider the preclusion of Sawyer's testimony, even if improper, to have had a substantial and injurious effect or influence on the jury's verdict. Ross's claim that he was denied a constitutional right therefore does not warrant habeas relief from this Court.

CONCLUSION

For the foregoing reasons, Ross's Petition for a writ of habeas corpus (D.E. 1) is DENIED. This Court declines to issue of certificate of appealability because Ross has not made a substantial showing that he was denied a constitutional right. See 28 U.S.C § 2253(c)(2). Moreover, the Court certifies that any appeal of this Order would not be taken in good faith, and thus Ross's in forma pauperis status is DENIED for the purposes of any potential appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 921, 8 L.Ed. 2d 21 (1962). The Clerk of the Court is respectfully directed to CLOSE this case and mail a copy of this Order to the pro se Petitioner.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  August __8__, 2019
        Central Islip, New York